**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 98-11425**

**DEWAYNE SLAUGHTER,**

**Plaintiff-Appellant,**

**VERSUS**

**OFFICER SHACKELFORD; OFFICER ORTIZ,**

**Defendants-Appellees.**

Appeal from the United States District Court
For the Northern District of Texas
(5:97-CV-291)

March 22, 2000

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Proceeding pro se and in forma pauperis, Dewayne Slaughter, a Texas prisoner, filed suit under 42 U.S.C. § 1983 alleging that Defendant-Officers Shackelford and Ortiz used excessive force in violation of the Eighth Amendment during an incident at the Lubbock County Jail. The district court denied Slaughter's motion for summary judgment and granted summary judgment to the officers, dismissing Slaughter's claim. Because there exists a genuine issue

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of material fact, we vacate the judgment and remand for trial.

## I.

Slaughter was arrested on a warrant revoking his parole and for burglary of a habitation on April 27, 1997, and was placed in the Lubbock County Jail. On the night of July 14, 1997, Slaughter was shaving in the jail's day room when Shackelford, who was distributing personal care items to prisoners, directed him to put on his shirt. Slaughter objected and debated with Shackelford as to whether the rules permitted a prisoner to have his shirt off in the day room while shaving. After a moment of arguing, Shackelford went to his superiors to determine who was correct. He returned shortly thereafter and confirmed Slaughter's assertion that a prisoner could shave without his shirt on in the day room.

From this point on, the two sides present conflicting versions of what happened. Slaughter maintains that Shackelford ordered him to come with Shackelford to another part of the jail, while Shackelford asserts that Slaughter demanded to see some "brass," or higher ranking officers. What is clear is that Shackelford, with the assistance of Ortiz, escorted Slaughter from the day room to another part of the jail, whereupon the alleged use of excessive force occurred.

According to Shackelford, when Ortiz and he were escorting Slaughter through a door connecting the inmate corridor to the office corridor, Slaughter became aggressive. Slaughter allegedly had clenched fists by his side and was inches from Shackelford's

2

face, a posture that in itself was an aggressive act because Shackelford could no longer see Slaughter's hands, knees, or feet. Shackelford responded by grabbing Slaughter's arm and attempting to move him forward. Instead of first moving forward, Slaughter initially stepped back and then apparently proceeded towards Shackelford. Upon observing what appeared to be an aggressive move towards a fellow officer, Ortiz attempted to place himself between Slaughter and Shackelford, but Slaughter tried to get past Ortiz. Subsequently, Ortiz and Shackelford tried to restrain Slaughter and again tried to move him forward. Slaughter allegedly continued to resist.

Around this time, Sergeant Rocha observed the scuffle and told the officers to handcuff Slaughter and take him to a violent cell. Because the two officers did not have enough leverage and were not able to turn Slaughter around, Shackelford utilized a straight-arm takedown to force Slaughter to the ground to handcuff him. Slaughter allegedly continued to resist, causing both officers to end up on the floor with him and injuring Ortiz. After Slaughter was handcuffed, Shackelford and Ortiz took him to the violent cell where his handcuffs were removed. Slaughter did not indicate that he needed medical attention. The two officers then left and returned to their other duties.

Slaughter's account of that night's events contrasts sharply with the officers' version. He maintains that he expressed no hostility or belligerence while being escorted. Instead, Slaughter asserts that upon being taken to the trap door, the two officers

3

jumped on his body. According to Slaughter's deposition testimony, he was standing by the wall next to the trap door when Shackelford started to yell at him. Slaughter apparently turned around to face Shackelford, whereupon Shackelford came within inches of Slaughter's face. Thereafter, Ortiz allegedly came behind Slaughter and grabbed Slaughter's throat, spinning him around into the wall. As Ortiz spun Slaughter around, Slaughter contends that Shackelford grabbed his arm and moved him forward through the door. At that point, an officer called out to take Slaughter down. Slaughter argues that he gave no resistance and that he actually aided the officers by placing his body in a prone position on his own initiative. While Slaughter concedes that Ortiz let up on his hold, he states that Shackelford utilized his arms in a choking fashion. After the officers placed Slaughter under control, he was escorted to the "Rubber Room," where he alleges that he was again taken to the floor and then hit upon by another officer.

Slaughter did not initially request medical attention upon being placed in the violent cell, but he charges that such requests were tendered to Rocha during the 10 to 11 hours that he was in the cell that night. Notwithstanding those requests, medical attention was not given until July 19, five days later. At the medical examination, Slaughter was prescribed Motrin and bed rest for five days. In mid-August, he again requested and received medical attention after further complaining of back, neck, and arm pain.

On September 23, 1997, Slaughter filed suit complaining of injuries suffered from Shackelford and Ortiz' use of force. A

magistrate judge held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to determine the precise claims made by Slaughter. The magistrate judge concluded that Slaughter was pleading an excessive force claim that sufficiently asserted a constitutional deprivation and, therefore, ordered responsive pleadings from the two officers. In their jointly filed answer, the officers denied using any excessive force, although they admitted to taking Slaughter down. After both parties submitted motions for summary judgment, the district court granted Shackelford and Ortiz' motion and denied Slaughter's.

## II.

We review a grant or denial of summary judgment de novo. *See Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The summary judgment evidence is reviewed in the light most favorable to the nonmovant. *See Melton v. Teachers Ins. & Annuity Ass'n*, 114 F.3d 557, 559 (5th Cir. 1997). If the moving party meets its initial burden of showing that there is no genuine issue, then the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue. *See* Fed. R. Civ. P. 56(e). The nonmovant cannot satisfy his summary

5

judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the nonmovant fails to respond, then summary judgment, if appropriate, shall be entered against that party. *See* Fed. R. Civ. P. 56(e).

## III.

When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the key inquiry is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 112 S. Ct. 999 (1992), *rev'g*, 929 F.2d 1014 (5th Cir. 1990). To aid in this examination, we have established several factors for review. They include:

1) the extent of the injury suffered;
2) the need for the application of force;
3) the relationship between the need and the amount of force used;
4) the threat reasonably perceived by the responsible officials; and
5) any efforts made to temper the severity of a forceful response.

*Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992) (citing *Hudson*, 112 S. Ct. 995, 999 (1992)). Of these factors, the primary emphasis is "the degree of force employed in relation to the apparent need for it, as distinguished from the extent of injury suffered." *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Indeed, the physical injury need not be significant, serious, or more than minor. *See id.* at 924. De minimis uses of force,

6

however, are excluded from Eighth Amendment analysis provided that the use of such force is not "repugnant to the conscience of mankind." *See* **Hudson**, 112 S. Ct. at 1000.

In its order, the district court held that Slaughter could not show that Defendants used force maliciously and sadistically in a manner to cause harm to Slaughter and that the summary judgment evidence indicated that Defendants applied force in a good faith effort to maintain or restore discipline. But Slaughter's version of the events of July 14 contradicts those conclusions. From the original complaint filed with the Lubbock County Jail's administration to his deposition testimony, Slaughter has consistently maintained that the officers attacked him despite a lack of aggression on his part. In essence, Slaughter charges that there was no good faith effort to maintain or restore discipline; rather, the inference from Slaughter's deposition testimony and his administrative complaint is that Defendants used force maliciously, possibly in retaliation for Slaughter's refutation of Shackelford's directive that shaving with a shirt off in the day room was prohibited. Hence, we conclude that a genuine issue of material fact exists as to whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

As further support for its ruling, though, the district court also concluded that Slaughter had not suffered an injury that was more than de minimis. Thus, it apparently surmised that he had not suffered an identifiable injury sufficient to make out a claim for

7

use of excessive force.  The summary judgment evidence, however, indicates that due to Defendants' actions, medical personnel prescribed five days of bed rest, in addition to medication, for Slaughter's injuries.  Such injuries are more than de minimis and are sufficient to state an excessive force claim.

For the assigned reasons, we vacate the judgment of the district court and remand for a trial on the merits.