Monique V. GASPARD

v.

**J & H MARSH & McLENNAN OF LOUISIANA, INC. and Marsh & McLennan, Incorporated**

**No. CIV.A. 97–3794.**

United States District Court,
E.D. Louisiana.

June 29, 2000.

William Peter Connick, Connick, Lentini, Wimberly & deLaup, Metairie, LA, Charles Philip Ciaccio, Metairie, LA, for Plaintiff.

Julie Durel Livaudais, George Phillip Shuler, III, Richard Barry Ramirez, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Defendants.

PORTEOUS, District Judge.

This cause came for hearing on a previous date upon the Motion of the Defendant for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court, having studied the legal memoranda and exhibits submitted by the parties, the record, and the applicable law, is fully advised on the premises and ready to rule.

### ORDER AND REASONS

## I. Background

On December 8, 1997, this lawsuit was brought by the Plaintiff, Monique D. Gaspard, against J & H Marsh & McLennan of Louisiana Inc. and Marsh & McLennan, Incorporated ("Marsh"), under 28 U.S.C. § 1337 and § 1343(a)(4) and 42 U.S.C. § 2000e–5(f). This is an action authorized and instituted pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff also invokes this Court's supplemental jurisdiction for relief under Louisiana Revised Statute 23:331.

Gaspard began employment at Marsh on March 28, 1996. Gaspard asserts that she was subjected to sexual harassment by James "Bo" Laborde ("Laborde"), an Assistant Vice–President, and Wayne Solis ("Solis"), a Vice–President, beginning in April of 1996. Plaintiff contends that as a result of the sexual harassment, which caused her severe emotional distress, she was obliged to resign from Marsh on December 9, 1996.

Gaspard brought suit on December 8, 1997. In her complaint, plaintiff stated that she was "obliged to work in an atmosphere which was hostile to females by virtue of unsolicited and unwelcome sexual advances, requests for sexual favors and other verbal and physical contact of a sexual nature." Plaintiff also claims that the sexual harassment was sufficiently pervasive and resulted in an "intimidating," "insulting," and "abusive," work environment. Plaintiff asserts that the harassment was so severe, she was "obliged to resign her employment on December 9,1996, and was thereby constructively discharged." Plaintiff seeks damages consisting of back pay, related benefits, reasonable attorneys fees, loss of future earnings, and compensatory and punitive damages.

On May 23, 2000, Marsh filed a Motion for Summary Judgment. Marsh has brought the present motion for summary judgment claiming that Gaspard has failed to meet her burden to establish a prima facie case of sexual harassment that satisfies the five factor test used in the Fifth Circuit and established under Title VII of the Civil Rights Act of 1964, to determine whether a viable claim of hostile environment of sexual harassment has been asserted. Marsh further moves for summary judgment on claims of retaliation, constructive discharge, and intentional infliction of emotional distress.

## II. Legal Analysis

### A. *Law on Summary Judgment*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655–56 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. *Gaspard's Claims Under Title VII*

**(1) Whether the plaintiff belongs to a protected class**

Gaspard is a female, which is a class of persons protected by Title VII.

**(2) Whether she was subjected to unwelcome sexual harassment**

Gaspard claims that she was subjected to the following: unwanted touching of her buttocks, unwanted clutching of her crotch, questions about her sex life, comments about her private parts, the grabbing of her head and the simulation of oral sex, having kisses blown at her, various tongue gestures directed towards her, a request to go to the alleged harasser's home when his wife was not there, and comments about the desire to see her naked.

**(3) Whether the harassment was based upon her sex**

Gaspard claims that she was targeted for this type of treatment because she is a female. In her Opposition to Motion for Summary Judgment, she states that she was sexually harassed by Marsh's two male employees because she is an "attractive young woman."

**(4) Whether the harassment affected a term, condition, or privilege of her employment**

Gaspard asserts that the harassment made her employment at Marsh unbearable. Further, she claims that she was unable to sleep, that she lost fifteen pounds, had "nighttime crying jags," was diagnosed with clinical depression, needed medication for depression, was not allowed client contact, was not allowed to attend seminars, and was "constantly hounded for minor infraction for which other Marsh employees were not punished," thereby severely affecting her employment.

**(5) Whether the defendant knew or should have known of the harassment and failed to take prompt remedial action**

Gaspard contends that Marsh did not take prompt remedial action in dealing with the alleged harassment. Gaspard claims that Marsh's five week response in talking to one of the alleged harassers was not prompt and remedial action.

## C. *Law on Title VII Sexual Harassment Claims*

The Fifth Circuit uses a five factor test as established under Title VII of the Civil Rights Act of 1964, in order to determine whether discrimination based on sex has created a hostile or abusive working environment. The test consists of the following elements: (1) Whether the plaintiff belongs to a protected class; (2) Whether she was subjected to unwelcome sexual harassment; (3) Whether the harassment was based upon her sex; (4) Whether the harassment affected a term, condition, or privilege of her employment; and (5) Whether the defendant knew or should have known of the harassment and failed to take prompt remedial action. *B.T. Jones v. Flagship International*, 793 F.2d 714 (5th Cir.1986).

## D. *The Court's Analysis*

Gaspard meets the first requirement as set out by the five factor test. She is a member of a protected class. She is a female, which is a class of persons protected by Title VII.

The second part of the test requires the plaintiff to be subjected to unwelcome sexual harassment. There is a significant factual dispute pertaining to this factor. Gaspard alleges that she was subjected to various acts of unwanted verbal and physical sexual harassment. Marsh and the alleged harassers vehemently deny these allegations.

In addition, the third element requires the sexual harassment to be based upon the sex of the victim. Gaspard contends that the reason why she was allegedly harassed was because she is a female, and thus would not have been subjected to the harassment if she was male. Therefore, the harassment that is complained of was based upon sex, and but for Gaspard being a female, she would not have been subject-

ed to the harassment. Thus, the plaintiff has made a prima facie showing of the third criteria of the test.

■ The fourth element of the test requires there to be an affect on a term, condition, or privilege of the alleged victim's employment. In order to meet this factor in establishing a prima facie case of sexual harassment, the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

According to Gaspard, she was harassed by Laborde on five occasions between April of 1996 and July of 1996. She also alleges that she was harassed by him on two occasions in October of 1996. In addition, Gaspard contends that she was sexually harassed by Solis on three occasions in September of 1996. The incidents that Gaspard alleges took place are as follows:

1. *The "Butt Grabbing" Incident*—Gaspard claims that when she was walking down the hallway near her cubicle in April of 1996, Laborde, who was behind her, "took his hand and not in so much of an aggressive way but let his hand pass across . . . [her] behind." Exhibit "A"% Plaintiff's Deposition, pp. 93–94. Gaspard contends that this incident only lasted 2–3 seconds and that she assumed it was an accident. *Id.* at 212–213.

In addition, Gaspard claims that Laborde grabbed her butt "more aggressively" the next month as she was standing at the entrance of her cubicle. *Id.* at 213. Gaspard contends that this incident only lasted 1–2 seconds.

2. *Comments About Gaspard's Trip to Memphis*—In the first week of July of 1996, after Gaspard returned from Memphis to visit her boyfriend, Laborde asked her who she went to see. *Id.* at 216. She replied, "It is none of your business." *Id.* Gaspard claims that Laborde then asked her if she went to see a male or a female, that after Gaspard asked him why it mattered, Laborde said that "it would give him

a better idea of what [she] did over the weekend." *Id.* at 216–217. Gaspard contends that Laborde's tone made her concerned about the comment. *Id.* at 217–218.

3. *The Rag Comment*—On July 30, 1996, Gaspard contends that Laborde approached her looking for something to clean his desk with. She then claims that Laborde asked her if she had a rag and then stated, "you know, besides the one between your legs." Exhibit "A", Plaintiff's Deposition p. 219.

4. *The "Um, Um, Um" Comment*—On July 31, 1996, Gaspard claims that Laborde walked up behind her and "went 'um,um,um,um,um'" as she was walking down the hallway towards the copy room. Gaspard testified that she ignored him and kept on walking. *Id.* at 223, 225.

5. *The Wife Not Home Comment*—In early October of 1996, Gaspard claims that Laborde attempted to lure her to his home by offering her a kitten as a gift. *Id.* at 229–230. She testified that Laborde further stated that his wife would not be home and that he only mentioned this to her and not the other employees to whom he offered a kitten. *Id.*

6. *The Naked at the Lakefront Comment*—On October 15, 1996, Laborde and Gaspard sat outside on a bench in front of their office building. *Id.* at 232–233. Gaspard testified that when she stated to Laborde that she would rather be at the lakefront, Laborde replied that he would like to be at the lakefront to, watching her run around naked. *Id.*

The following incidents involved only Solis:

7. *The Blowing Kisses Incident*—On September 9, 1996, Gaspard contends that Solis harassed her when she went into Solis' office to discuss a question she had about an insurance certificate. *Id.* at 129–130. Gaspard testified that Solis told her to shut the door so he could use the speakerphone. *Id.* at 130, 243. She told him that it was not necessary to shut the door,

and then Solis asked an employee from the mail room to shut the door as he had just walked into Solis' office to deliver the mail. *Id.* at 243. Gaspard alleges that Solis began blowing kisses to her. Gaspard testified that she ignored Solis. *Id.* at 246. Gaspard contends that she was in the office no longer than five minutes and that the call on the speakerphone was made. *Id.* at 247–248.

Gaspard also testified that Solis blew kisses to her throughout the next day and made sexual gestures with his tongue. *Id.* at 248–249. Further, Solis testified that she did not tell Solis to stop blowing her kisses and to stop making tongue gestures because she stated "that was . . . [just] Wayne." *Id.* at 253.

8. *The Crotch Incident*—On September 12, 1996, Gaspard claims that as she was on her knees looking in the bottom drawer of the file cabinet in her cubicle, Solis grabbed the back of her head, pulled it toward the crotch of his pants, and said "Oh, perfect position." *Id.* at 255.

In *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the court stated that:

Antidiscrimination provisions of Title VII do not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex; simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment.

Thus, the question is one of degree. The incidents claimed must be of such serious nature that effective employment would be impossible. Gaspard contends that these incidents made her feel very uneasy and made it difficult for her to do her work. Further, she asserts, in her Statement of Contested Issues of Fact, that the ability to do her job diminished until she was "forced to seek medical attention due to the sexual harassment." Contrarily, Marsh, in its Motion for Summary Judgment, contends that the comments at issue were "completely benign and not the type of comments that state a claim of sexual harassment" and that the allegations made by Gaspard are "far less egregious" than those that have been inactionable in prior case law.

In *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803 (5th Cir.1996), the court found that frequent sexually explicit comments created a hostile environment. In *Waltman v. International Paper Co.,* 875 F.2d 468 (5th Cir.1989), the court held that there was a hostile environment where a female employee was repeatedly sexually groped. Moreover, this standard was found in *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191(5th Cir.1996), in which the court stated that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." Gaspard claims that because of the sexual harassment she was unable to function in the workplace. Conversely, Marsh denies the allegations all together thereby resulting in a question of a genuine issue of material fact. As such, it is this Court's opinion that reasonable minds could differ and the matter must be resolved by the trier of fact after all evidence has been presented.

■ The fifth element required in establishing a claim of hostile environment due to sexual harassment is whether the employer knew or should have known of the harassment and failed to take prompt remedial action. Remedial action to an employee's complaints of sexual harassment will depend upon the particular facts of the case, including the severity and persistence of the harassment and the effectiveness of any initial remedial step. *Waltman,* 875 F.2d 468.

On July 10, 1996, Gaspard met with Diana Gladwell ("Gladwell"), her immediate supervisor, for her three month evaluation. Three incidents had occurred by then, according to Gaspard. The three incidents were the "butt grabbing" incident, comments about Gaspard's trip to

Memphis, and the "rag comment." These incidents were never discussed in the July 10, 1996, meeting. Exhibit "A", Plaintiff Deposition p. 121.

The first time Gaspard told anyone about the alleged harassment was in June of 1996. Gaspard mentioned to co-worker and friend, Debbie Maybank, that Laborde had grabbed her butt twice. Exhibit "A", Plaintiff's Deposition, p. 100. Approximately a few weeks thereafter, Maybank reported this to Gaspard's supervisor, Diana Gladwell. Exhibit "K", Gladwell Deposition pp. 65–68. Gladwell, at this time, did not report the incident. Gladwell testified that she discussed the matter with Gaspard and that Gaspard had asked her to keep the matter quiet. *Id.*

On September 12, 1996, Gaspard testified that she had told Solis, the other alleged harasser, about the Laborde incidents. Exhibit "A", Plaintiff's Deposition, pp. 140–141. Solis testified the event took place on September 11, 1996. Exhibit "F", Solis Deposition, p .25.

Solis then went to Gladwell to report the incident. *Id.* Gladwell contacted the corporate office's Human Resources Department on the same day. Exhibit "K", Gladwell Deposition, pp. 84–85. On September 16, 1996, Ellie Pamplin, Marsh's Regional Human Resources Director, came in from Texas to investigate the allegations.

Pamplin spent two days in New Orleans speaking to Gaspard and other employees about the allegations. Pamplin was instructed not to talk to Laborde because the Region Head, Lloyd Reid, wanted to discuss the allegations with Laborde personally. Exhibit "H", Pamplin Affidavit; Exhibit "I", Reid Affidavit.

When Pamplin met with Gaspard on September 16, 1996, Gaspard told her of the incidents that allegedly took place between her and Solis. Exhibit "L", Pamplin investigation. Gaspard also testified that the inappropriate behavior by Laborde had stopped abruptly. *Id.*

On September 17, 1996, Pamplin met with Solis. Pamplin testified that she told Solis of Marsh's zero tolerance policy for sexual harassment. Exhibit "L", Pamplin Investigation; Exhibit "F", Solis Deposition, P.27.

During the same week, Reid, the Region Head, came to New Orleans. According to Reid, this trip was made in response to Gaspard's allegations. Exhibit "I", Reid Affidavit. On September 23, 1996, Reid testified that he had met with Solis and told him of Marsh's zero tolerance policy on sexual harassment. Exhibit "F", Solis Deposition, p. 119. Reid did not meet with Laborde to discuss the allegations. *Id.*

On October 18, Gladwell had a discussion with Gaspard concerning her attendance at work. Gaspard then told Gladwell that Laborde was still bothering her. Exhibit "A", Plaintiff Deposition, p. 152. Gladwell told Gaspard to notify Pamplin about the subsequent events. *Id.* Gladwell then called Pamplin to find out if Gaspard had told her about the complaint. Exhibit "K", Gladwell Deposition, p. 151; Exhibit "H", Pamplin Affidavit. Gaspard testified that she did not discuss Laborde's recent behavior with Pamplin. Exhibit "A", Plaintiff Deposition, p. 174.

According to Pamplin, she then discussed the situation with Reid. Reid told Pamplin to return to New Orleans to investigate the latest allegations. On October 22, 1996, Pamplin met with Laborde, for the first time, to discuss the allegations. Laborde denied Gaspard's claims of sexual harassment. Exhibit "L", Pamplin Investigation. Pamplin told Laborde that if anything inappropriate was to happen again, that it would be grounds for termination of his employment. *Id.* On November 1, 1996, letters of reprimand were put in Solis' and Laborde's personnel files. *See,* Exhibit "M", Solis Reprimand; Exhibit "N", Laborde Reprimand.

Thus, although Gaspard's immediate supervisor, Diana Gladwell, found out about the events involving Laborde sometime in June of 1996, management did not discuss the allegations with Laborde until October of 1996, approximately three months later. Whether this would be considered prompt

remedial action is a material question of fact.

### E.  Gaspard's Retaliation Claim

A retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), has three elements: (1) the employee engaged in activity protected by Title VII; (2) an employer took adverse action against the employee; and, (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery*, 139 F.3d 532 (5th Cir.1998), *Grimes v. Texas Department of Mental Health, et al.*, 102 F.3d 137, 140 (5th Cir.1996); citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir.1999). The establishment of a prima facie case gives rise to an inference of retaliation. *Id.* The burden then shifts to the defendant who may rebut the presumption by articulating a legitimate, non-discriminatory reason for its actions. *Id.* If the defendant satisfies this burden, the plaintiff must prove the proffered reasons were pretextual. *Id.*

■ An employee is engaged in a protected activity under Title VII when she has (1) "opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Haynes v. Pennzoil*, 207 F.3d 296 (5th Cir.2000); 42 U.S.C. § 2000e–3(a). Clearly, reporting sexual harassment is a protected activity found under Title VII.

■ The next element of the test is to determine whether there were adverse employment actions taken against Gaspard. Gaspard contends that after she reported the sexual harassment she was not allowed to attend a company seminar out of town, her work load was taken away from her, her contact with clients was restricted, she was ostracized, and was scrutinized for "minor infractions." In addition, Gaspard states that she was "repeatedly counseled regarding timekeeping and the storage of personal belongings in her cubicle immediately after reporting the sexual harassment." She further contends that Gladwell "began fabricating long, single spaced memoranda purporting to document conversations" she had with Gaspard, as a result of reporting the harassment. She also asserts that the memoranda contained charges of only "minor infractions" and failed to mention any of the complaints of sexual harassment.

The last element to be decided in a claim of retaliation is whether there is a causal connection between the adverse employment actions and the complaint of sexual harassment. Gaspard asserts that but for the report that she was harassed by Laborde and Solis, she would not have been the victim of the adverse employment action discussed above.

■ Thus, Gaspard has set forth a prima facie case for retaliation and as such the burden shifts to Marsh. Marsh explains that it had legitimate and non-retaliatory reasons for actions taken against Gaspard. Marsh contends that any adverse employment actions that were taken were the result of repeated tardiness and absenteeism. Marsh stated that "Gaspard had a heavily documented history of attendance problems," she was often tardy, and she missed numerous days of work. Furthermore, in its Reply to Plaintiff's Opposition to Summary Judgment, Marsh states that "At no time in her counseling sessions concerning attendance issues did she raise sexual harassment as the cause; plaintiff attributed her problems to her carpool colleagues and to having to get her daughter to school." Because Marsh has come forward with a non-discriminatory reason, the burden shifts back to the plaintiff to show that the proffered reason was merely pretextual. It is the opinion of this Court that issues of fact exist in this regard.

### F.  Constructive Discharge Claim

■ In order to prove a viable claim of constructive discharge, a plaintiff must prove that she was forced to resign be-

cause of intolerable conditions. *Webb*, 139 F.3d 532. "To prove constructive discharge, [a] Title VII plaintiff must establish that working conditions at employer were so intolerable that [a] reasonable employee in her position would feel compelled to resign."

Gaspard contends that the sexual harassment interfered with her job performance by creating an "intimidating, hostile, and offensive work environment." She also states that "she had no meaningful choice but to resign." Marsh, in its Motion For Summary Judgment, contends that the only reason Gaspard has a constructive discharge claim is to show that the "harassment she claims to have endured did, in fact, affect a term or condition of her employment and/or to establish an adverse employment action for retaliation purposes." Moreover, Marsh claims that the company did "everything it could to keep Gaspard as an employee." Therefore, this Court finds there to be contested issues of fact in the claim of constructive discharge, namely whether the conditions were so intolerable that a reasonable employee in Gaspard's position would feel compelled to resign.

### G. *Gaspard's Intentional Infliction of Emotional Distress Claim*

Under Louisiana law, there are essentially three elements in a claim for intentional infliction of emotional distress: (1) extreme and outrageous conduct by defendant; (2) severe emotional distress suffered by plaintiff; and (3) desire by defendant to inflict severe emotional distress or knowledge that severe emotional distress would be certain or substantially certain to result from its conduct. *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991).

Gaspard claims that she suffered severe emotional distress as a result of Marsh's outrageous conduct and that Marsh knew that the conduct would result in severe emotional distress. Marsh contends that Gaspard cannot establish the any of Marsh's actions regarding the sexual harassment were extreme and outra-

geous. Thus, issues of fact exist regarding whether the behavior was extreme and outrageous.

In addition, Marsh contends that Gaspard's state law claims are time-barred. Gaspard resigned by telephone on December 9, 1996. Her original complaint was filed on December 8, 1997, within the one year liberative prescription period within which Louisiana state law tort claims are viable. Thus, this Court finds that Gaspard's state law claims are timely.

### III. Conclusion

This Court is of the opinion that Summary Judgment in favor of the Defendant is not appropriate at this time.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment be and the same is hereby **DENIED** pursuant to Rule 56 of the Federal Rules of Civil Procedure.