**Glena Sue YERBY, Plaintiff,**

v.

**THE UNIVERSITY OF HOUSTON, and the University of Houston System, Defendants.**

**No. CIV.A.H–01–0633.**

United States District Court, S.D. Texas, Houston Division.

Oct. 25, 2002.

**756**

Joseph Y. Ahmad, Ahmad Zavitsanos, Houston, TX, Andrew S. Golub, Dow Golub, Houston, TX, for plaintiff.

Antoinette Hunter, William T. Deane, Allison Ianthe Wong, Office of Atty. Gen., Austin, TX, for defendants.

## MEMORANDUM & ORDER

RAINEY, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt.# 22). Additionally pending before the Court are Plaintiff's Motion to Strike and Objections to Various of Defendants' Summary Judgment Evidence (Dkt.# 26) and Defendants' Objections to Plaintiff's Motion for Summary Judgment Evidence (Dkt.# 30). After careful consideration of the parties' arguments contained in the motion, response, and various replies, the evidence, and the applicable law, the Motion for Summary Judgment is DENIED, as explained below. Plaintiff's Motion to Strike is DENIED and Plaintiff's objections are OVERRULED, as explained below. Defendants' objections are OVERRULED, as explained below.

### *Objections to the Evidence*

#### A. Defendants' Objections

Defendants have submitted to the Court an exhaustive laundry-list of unsubstantiated objections to evidence provided to the Court both by Plaintiff and by Defendants, themselves, on the grounds that those items of evidence are irrelevant and contain hearsay statements. With the exception of objections 1–3 and 15, Defendants fail to adequately explain the grounds for their objections. In fact, much of Defendants' submission to the Court consists only of page after page of "objectionable" deposition excerpt line numbers. Moreover, the Court finds that Defendants' objections go more to the weight of the evidence, rather than its admissibility. Accordingly, to the extent that Defendants have failed to support their objections, the Court overrules objections 4–14 and 16–51. With respect to Defendants' objection 1, the Court has not considered any of the evidence contained in Plaintiff's Appendix A in making its determinations. Therefore, the Court overrules objection 1 as moot.

The Court additionally overrules Defendants' objection 2. Because Defendants have, themselves, affirmatively submitted the investigation report as an exhibit to their own summary judgment motion without any limitations or qualifications, the Court may consider all appropriate evidence in that exhibit. However, to the extent that the report contains inadmissible hearsay statements, the Court has not considered them.

At this time, the Court declines to rule on Defendants' objection 3 regarding the admissibility of the EEOC determinations. The Court will instead rule on Defendants' Motion and Amended Motion to Exclude the EEOC file and letters of determination (Dkts. # 38 and 49) in a separate order.

Defendants object to Plaintiff's Exhibit 15 on the ground that it contains inadmissible hearsay statements. The Court overrules Defendants' objection 15. The Court finds the affidavit relevant to the issue of whether a hostile work environment existed in the OGC. However, the Court has not considered any inadmissible hearsay statements contained therein.

#### B. Plaintiff's Objections

Plaintiff objects to the admissibility of Defendants' Exhibit C. Because the Court

has not considered any inadmissible portions of that deposition against Plaintiff, the Court overrules the objection as moot. Second, Plaintiff objects to Defendants' Exhibit I on the ground that it contains hearsay. Because the Court has only considered the document for the purpose of showing that the panel did make those statements, and has not evaluated the statements for the truth of the matter asserted, the objection is overruled as moot. Finally, Plaintiff objects to Defendants' Exhibits K, M, P, and EE as being inadmissible on the basis of relevance and hearsay. Because the Court has not considered these exhibits in making its determinations, the Court overrules the objections as moot.

In evaluating Defendants' summary judgment motion and Plaintiff's response, the Court has only considered relevant, properly admissible evidence.

### Factual and Procedural Background

This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Plaintiff, Glena Sue Yerby ("Yerby"), alleges that she was subjected to a hostile work environment and retaliation in violation of Title VII.

Yerby was hired by Defendant, University of Houston ("U of H"), in 1992 as a legal secretary in the University Office of the General Counsel ("OGC"). In 1994, Yerby's position was re-characterized as Business Administrator in the OGC. As Business Administrator, Yerby's responsibilities included performing general office management for the department and its attorneys, including coordination of schedules and assignments, performing financial and budget accounting, advising on departmental budgets, authorizing fiscal documents related to budget allocations, preparing required financial reports, supervising all personnel and payroll ac-

tions, monitoring purchasing and reimbursement related activities, and serving as the liaison between the OGC and other offices in the U of H system.[1]

On October 15, 1997, Dennis Duffy ("Duffy") joined the OGC as General Counsel. Several of the OGC employees have recounted incidents which allegedly occurred during the period from October 1997 until March 1998, during which Duffy acted in a manner which exhibited hostility toward women. These allegations, and evidence in support thereof, are discussed in further detail below. In March 1998, OGC attorney Susan Septimus and OGC legal secretary Carolyn Williams each filed internal complaints of gender discrimination with the University of Houston Affirmative Action Office. In order to avoid any conflicts of interest, U of H hired attorney Deborah McElvaney ("McElvaney") to conduct an investigation of the discrimination claims and compile a report of her findings. During the course of McElvaney's investigation, Yerby filed her own complaint with the Affirmative Action Office alleging gender discrimination. At the conclusion of her investigation, McElvaney determined that there was evidence of a hostile work environment in the OGC. She submitted a report detailing her findings to the Chancellor's Office. Around this time, on August 6, Yerby went on worker's compensation leave after suffering an on-the-job injury to her foot.

Upon receipt and review of McElvaney's report, U of H formed an Ad Hoc Review Panel to evaluate the thoroughness and fairness of McElvaney's report and assess the weight it should be given. The Panel ultimately rejected McElvaney's findings with respect to hostile work environment and issued its own determination that "while the perception of hostility exists, it is not as a result of [Duffy's] treating men

---

1. *See* 1998 University of Houston Staff Performance Appraisal, Dkt. # 25, Exhibit 23.

and women differently."[2] In a memorandum dated May 29, 1998, Yerby was notified by U of H Chancellor Arthur Smith of his determination that there was "no basis" for her complaints that she was discriminated against by Duffy.[3] Smith informed Yerby that the investigation into her complaints was officially closed. In the memo, Smith also wrote that "the University ... would be willing to try to find [Yerby] a position in some other area that would be suited to [her] qualifications and experience."[4] Smith instructed Yerby to discuss the possibility of a transfer with Human Resources. On July 9th Yerby contacted Vice Chancellor of Human Resources Robert Herrington regarding Smith's memo, inquiring how she could "avail [herself] of the offer made by the chancellor."[5]

Yerby's doctor released her back to work at the end of August. Sometime in mid August,[6] before Yerby went back to work in the OGC, a meeting took place in Duffy's office between Duffy, Herrington, OGC secretary Jackie Hershey, and Yerby. During this meeting, Duffy instructed Yerby to turn in her keys to the office and told her that she would be reporting to Jackie Hershey. According to Duffy's deposition, he asked Yerby whether she wanted to have as little direct contact with him as possible. In Duffy's view, Yerby answered in the affirmative.

Herrington recalls the meeting as being very brief, with Duffy doing most of the talking. From Hershey's perspective, it was uncomfortable and embarrassing for her to listen to Duffy speak to Yerby in the manner in which he did. Yerby and Hershey both admit that they cried together after the meeting. Yerby expressed to Herrington her continued desire for a transfer to another position within the university.

After that meeting, Yerby returned to work in the OGC. Her official title remained "Business Administrator" and her salary and benefits remained unchanged. In Yerby's 1999 performance evaluation, Duffy listed as her responsibilities word processing, dictation, typing, filing, copying, addressing correspondence, and assisting office manager.[7] Duffy also wrote, "[Yerby] provides secretarial support ... the tasks required for [her] position are, for the most part, mechanical and repetitive."[8]

For eight months, Yerby remained employed under Duffy in the OGC. During this time, with U of H's assistance, Yerby interviewed with various departments throughout the university. After several unsuccessful attempts to be hired in these other departments, Yerby was eventually transferred administratively in May 1999.[9] On January 21, 1999, Yerby filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination, age discrimination, and retaliation.

**2.** Dkt. # 22, Exhibit I, ¶ IV.B.

**3.** Dkt. # 22, Exhibit N; *See also* Dkt. # 25, Exhibit 28.

**4.** *Id.*

**5.** Dkt. # 25, Exhibit 29.

**6.** The parties dispute the date on which this meeting occurred. Yerby claims that the meeting took place on August 24, 2002, the date on which she was to return to work. In

contrast, U of H insists that the meeting occurred on August 17, 2002.

**7.** *See* 1999 University of Houston Staff Performance Appraisal, Dkt. # 25, Exhibit 24.

**8.** *Id.*

**9.** U of H maintains that Yerby was not hired for the department positions for which she interviewed because, in each case, she was not the most qualified candidate for the job.

On November 28, 2000, the Civil Rights Division of the United States Department of Justice issued Yerby a Notice of Right to Sue. Yerby filed a complaint with this Court on February 21, 2001. In her complaint, Yerby alleges that she was subjected to a hostile work environment and was retaliated against by U of H for exercising her right to complain of discrimination, both in violation of Title VII, 42 U.S.C. § 2000e–2(a), § 2000e–2(m), and § 2000e–3(a). U of H filed its motion for summary judgment on June 14, 2002, and Yerby filed her response to that motion on July 26, 2002.[10] The Court now addresses both.

## *Discussion*
### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.,* 246 F.3d 500, 502 (5th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322, 106 S.Ct. 2548. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial ..., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom (In re Segerstrom ),* 247 F.3d 218, 223 (5th Cir.2001); *see also Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to

---

**10.** The Court has additionally received U of H's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt.# 28) and Yerby's Surreply Regarding Defendants' Motion for Summary Judgment (Dkt.# 33). The Court has reviewed and considered both briefs.

the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)

## B. Title VII Claims

U of H argues that summary judgment should be granted in its favor on Yerby's Title VII claim for hostile work environment and on Yerby's Title VII claim for retaliation. The Court will address the merits of each of Yerby's claims in turn.

### 1. Hostile Work Environment Claim

Yerby alleges that Duffy created a hostile work environment in violation of Title VII. Before the Court evaluates the merits of Yerby's hostile work environment claim, the Court will address two preliminary arguments made by U of H with respect to that claim: (1) whether collateral estoppel bars the litigation of the claim; and (2) whether the statute of limitations bars litigation of the claim.

### a. Whether collateral estoppel bars Yerby's claim for hostile work environment

█ U of H argues that the principle of collateral estoppel bars Yerby from litigating her hostile work environment claim against U of H. In particular, U of H maintains that "the facts sought to be litigated by [Yerby] are whether Mr. Duffy's conduct created a hostile working environment on the basis of gender." U of H insists that those facts were "fully and

fairly litigated in *Septimus v. University of Houston*, Cause No. H–00–3307," in which the Court granted partial summary judgment in favor of U of H on Septimus's hostile work environment claim, on the ground that Septimus failed to show that Duffy's conduct was severe or pervasive enough to violate Title VII. According to U of H, because Yerby and Septimus experienced the same work environment and shared the same supervisor, the district court's finding in *Septimus* should also bind Yerby. Yerby strongly contests U of H's collateral estoppel argument. In response, Yerby insists that if she is prevented from having an evaluation of the merits of her hostile work environment claim independent of *Septimus*, she will be deprived of her due process rights.

█ Although Texas law governs the preclusive effect of prior *state* court judgments, federal law determines a prior *federal* court judgment's collateral estoppel effect. *See Jackson v. FIE Corp.*, 302 F.3d 515, 529 (5th Cir.2002); *Next Level Comm. LP v. DSC Comm. Corp.*, 179 F.3d 244, 250 (5th Cir.1999) (citing *RecoverEdge LP v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir.1995). Generally, collateral estoppel bars the relitigation of certain issues that were previously adjudicated. The Fifth Circuit has instructed that collateral estoppel "encompasses three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *Next Level*, 179 F.3d at 250; *see also RecoverEdge*, 44 F.3d at 1290; *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999). Collateral estoppel only applies to "an issue of ultimate fact that has been determined by a valid and final judg-

ment." *Stripling v. Jordan Production Co. LLC,* 234 F.3d 863, 868 (5th Cir.2000) (citing *RecoverEdge,* 44 F.3d at 1290)). Importantly, the Fifth Circuit has held unequivocally that "an order granting partial summary judgment has no res judicata or collateral estoppel effect." *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1272 (5th Cir.1986) (declining to depart from its previously stated rule that partial summary judgment orders, as to which appellate review is unavailable, cannot have preclusive effect).

U of H argues that the *Septimus* court's partial summary judgment order (granting summary judgment in favor of U of H on Septimus's hostile work environment claim) should preclude litigation of Yerby's hostile work environment claim. The Court notes that the *Septimus* court did not enter final judgment on the hostile work environment claim. Because the Fifth Circuit has instructed that a partial summary judgment order, which has not been made final, cannot serve as a final judgment, the Court finds that U of H has failed to demonstrate that the issue of whether Yerby was subjected to a hostile work environment was fully and fairly litigated to final judgment in *Septimus.* Additionally, the Court notes that Yerby was not a party to the *Septimus* litigation. Emphasizing that the purpose of collateral estoppel is to stop plaintiffs from re-litigating their *own* suits, the Fifth Circuit has held that it is "a violation of due process for a judgment in a prior suit to be binding on a litigant who was not a party or privy and therefore has never had an opportunity to be heard." *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 865–66 (5th Cir.1985). The Court finds that, in addition to not being a party to the *Septimus* case, Yerby was not a privy either. While Yerby and Septimus may have shared the same supervisor and experienced many of the same alleged incidents, even shared the same attorney, their inter-

ests are not so closely aligned, such that Septimus adequately represented Yerby's interest in the prior suit. *See id.* at 864 (holding that privy requires "more than a showing of parallel interests, or, even, a use of the same attorney in both suits"); *see also Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.1977) (holding that to be adequately represented in another's case by "virtual representation," the non-party's interest must be "closely aligned" with those of the party's). Accordingly, the Court finds that collateral estoppel does not bar this Court's evaluation of Yerby's hostile work environment claim.

### b. Whether Yerby's claim for hostile work environment is barred by the statute of limitations

■■ U of H next maintains that Yerby has failed to allege any incidents that occurred within the statutory period of limitations. According to U of H, because Yerby filed her Charge of Employment Discrimination with the EEOC on January 21, 1999, U of H cannot be held liable for any conduct that occurred before March 27, 1998, 300 days prior to her filing. Title VII requires plaintiffs to file charges of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, if the plaintiff has "instituted a proceeding with a State or local agency with authority to grant or seek relief from such practice," the limitations period for filing a charge extends to 300 days. *Id.* Therefore, U of H insists that, because Yerby cannot demonstrate any incidents of harassment that took place after March 27, 1998, her cause of action for hostile work environment is barred.

The Supreme Court has recently held that, when analyzing whether a hostile work environment claim is barred by the

statute of limitations, courts should note that if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. ("AMTRAK") v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). The Supreme Court further held that "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 2075.

Yerby has provided evidence of incidents of alleged harassment which occurred after Yerby returned from medical leave. For example, in her deposition, Yerby asserts that, upon returning to work in August of 1998, she was "verbally abused ... by Dennis Duffy" and was "humiliated."[11] Because the Supreme Court has instructed us to view a potentially hostile work environment as "a single unlawful employment practice," the Court finds that Yerby has complied with the statute of limitations by complaining of misconduct which allegedly continued to take place after March 27, 1998 (300 days before Yerby filed her charge with the EEOC). Furthermore, because the Court has found that one act, which is part of a series of acts collectively constituting an alleged pattern of hostility, occurred within 300 days of Yerby's filing, the Court is permitted to consider all of the acts alleged, whether or not they fall within the 300–day time period. *See id.* Accordingly, the Court will next evaluate the merits of Yerby's hostile work environment claim.

### c. The merits of Yerby's hostile work environment claim

■ U of H urges the Court to grant summary judgment as to Yerby's hostile

work environment claim on the ground that Yerby is unable to establish a *prima facie* case. A plaintiff who asserts a hostile work environment claim under Title VII must establish that: (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Green,* 284 F.3d at 655 (citing *Mota v. Univ. of Tex. Houston Health Science Ctr.,* 261 F.3d 512, 523 (5th Cir. 2001)). The Court notes that there is no dispute that Yerby is a member of a protected class. According to U of H, however, Yerby has failed to demonstrate (1) that the alleged harassment was based on sex and (2) that the alleged harassment affected a term, condition, or privilege of employment. In response, Yerby maintains that she has successfully satisfied her *prima facie* case of hostile work environment.

### i. Whether the alleged harassment was based on sex

■ U of H first argues that Yerby has failed to present sufficient evidence that Duffy's alleged harassment was based on sex. Instead, U of H contends, the alleged harassment "was motivated only by Mr. Duffy's perception that Yerby's work performance needed improvement."[12] The Court is not persuaded by U of H's argument. Yerby has provided several items of evidence tending to show that many women in the OGC, not just Yerby, were treated with less respect and dignity than were their male co-workers. For example, in his deposition, former OGC Associate General Counsel, Joe

---

**11.** Dkt. # 22, Exhibit E, p. 44–45, lines 10–13.

**12.** Dkt. # 22, ¶ III. A. I.

Williams, described Duffy as a misogynist.[13] He stated: "my generalization of Dennis's feelings toward women was that he didn't respect them and that ... he didn't give them the same degree of credibility, or he gave them less credibility because he perceived them as acting more from emotion."[14] Williams also stated his belief that Duffy was more prone to lose his temper with female employees than with him.[15]

The depositions of Yerby, OGC attorneys Susan Septimus and Bonnie Weisman, and Affirmative Action Office head Electra Yourke all indicate that on numerous occasions Duffy's conduct brought the female employees in the OGC to tears.[16] Weisman's deposition also suggests that Duffy made open and disparaging remarks about secretary Carolyn Williams' weight.[17] In her deposition, Susan Septimus described an interaction she had with Duffy during which she asked for a promotion and he responded that she reminded him of an old girlfriend who was so needy that he had to break up with her.[18] Yerby has also presented evidence that Duffy described Dean Lois Zamora as "an uppity woman" and accused female OGC

attorney Jane Olinger of being "overly emotional."[19] Referring to Yourke, Duffy commented, "Jewish women are like that."[20] The evidence also reveals repeated incidents of Duffy berating his female employees and criticizing them in what Yerby views as a "humiliating" manner.[21] There is no evidence that Duffy engaged in the same type of behavior with male employees. Finally, at the close of her internal investigation, McElvaney determined that Duffy was quite bold about making "very negative remarks about women."[22] In McElvaney's opinion, these remarks reflected "an unprofessional manner of dealing with women."[23] Additionally, McElvaney concluded that, in her opinion, Duffy talked to women in a way that "made them feel insecure, diminished, and berated ... to the point of breaking."[24]

Based on Yerby's evidence, a reasonable juror could conclude that the incidents discussed above illustrate a pattern of treating women differently than men. Accordingly, the Court finds that, for the purpose of satisfying her *prima facie* case, Yerby has presented sufficient evidence that the alleged harassment was based on sex.

13. Dkt. # 25, Exhibit 13, p. 109–110.

14. *Id.* at 111.

15. *Id.* at 111–12.

16. Dkt. # 25, Exhibit 6, p. 106; Dkt. # 25, Exhibit 44, p. 87–88; Dkt. # 25, Exhibit 41, p. 54, Dkt. # 25, Exhibit 15, ¶ 15–16.

17. Dkt. # 25, Exhibit 41, p. 214–15.

18. Dkt. # 25, Exhibit 14, p. 107–108.

19. Dkt. # 25, Exhibit 15, ¶ 19.

20. Dkt. # 25, Exhibit 1, p. 9.

21. Yerby has described weekly meetings with Duffy during which he would "go into a tirade usually for anywhere from 15 to 30 minutes, telling [her] how dumb, incompetent, incapable [she] was at everything [she] did." Dkt. # 22, Exhibit A, p. 40–41. Susan Septimus has related an episode during which she sobbed as Duffy berated her in her office, yelling and pounding his fist so loudly that the rest of the office could hear. Dkt. # 25, Exhibit 15, ¶ 14–18. Bonnie Weisman has stated that her interactions with Duffy left her feeling "powerless" and "scared [her] to death, and [she] usually left the room crying." Dkt. # 25, Exhibit 41, p. 54, 151. These incidents are discussed in more detail in Section B.1.c.ii. of this Order.

22. Dkt. # 25, Exhibit 10, p. 64–65.

23. *Id.*

24. Dkt. # 25, Exhibit 10, p. 65–66.

### ii. Whether the alleged harassment affected a term or condition of employment

▮ Second, U of H asserts that Yerby cannot show that the alleged harassment affected a term, condition, or privilege of her employment. To affect a term, condition, or privilege of employment, the alleged harassment must be severe or pervasive, and the sexually objectionable environment must also be both subjectively and objectively offensive. *Green*, 284 F.3d at 655. Whether an environment is hostile or abusive enough to support a hostile work environment claim depends on a totality of circumstances. *Id.* at 655–656. When examining the totality of the circumstances, a court should focus on such factors as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.*

U of H maintains that no reasonable person would have been adversely affected by Duffy's conduct, nor was Yerby herself adversely affected by the conduct. First, U of H objects that Yerby has not presented any evidence that "physical or sexual advances were made." [25] As Yerby points out, however, courts have held that hostility toward women "can obviously result from conduct other than explicit sexual advances." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3rd Cir.1990). In particular here, Yerby attempts to show hostility in the form of misogynism, rather than sexual advances.

▮ Second, U of H argues that the "three contacts between Yerby and Dennis Duffy [that Yerby described in her initial internal complaint] are insufficient" to establish that any harassment was severe or pervasive. [26] What U of H ignores, however, is that Yerby has presented evidence of incidents that occurred not just between herself and Duffy, but also between Susan Septimus and Duffy, and between Bonnie Weisman and Duffy. In considering the totality of the circumstances of the work environment, the Court can look to the experiences of all women in the same environment. *See, e.g., Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415–16 (10th Cir. 1987); *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C.Cir.1985), *aff'd on other grounds, Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Yerby maintains that during weekly meetings with Duffy, he would "go into a tirade usually for anywhere from 15 to 30 minutes, telling [her] how dumb, incompetent, incapable [she] was at everything [she] did." [27] After one meeting, Yerby explains, she felt so "physically threatened" that she went to the office of Vice President for Technology Steve Green and cried for thirty minutes. [28] Yerby maintains that, on more than one occasion, Duffy would pound on his desk while speaking to her and gradually get closer to where she was sitting. [29] Yerby took these actions as "a personal threat," as they "[were] enough to scare the hell out of [her]." [30] Yerby also presents evidence that, after she allegedly mishandled arrangements relating to the OGC's relocation to a new office, Duffy kept repeating "how could you let this happen?" in a "threatening tone." [31] In her deposition,

---

**25.** Dkt. # 28, p. 7.

**26.** Dkt. # 28, p. 5.

**27.** Dkt. # 22, Exhibit A. p. 40–41.

**28.** Dkt. # 25, Exhibit 6, p. 105, 117–118.

**29.** *Id.* at 124.

**30.** *Id.* at 124–25.

**31.** Dkt. # 25, Exhibit 6, p. 105.

Yerby described how, at a meeting called by Duffy, with OGC attorneys Susan Wheeler and Brian Nelson present, after Yerby failed to provide him with a proper explanation of new computer software, Duffy embarrassed Yerby by telling her that she was stupid and incompetent [32]

Susan Septimus has also detailed her interactions with Duffy, which she claims caused "profoundly disturbing feelings of uselessness and incompetence." [33] In her affidavit, Septimus recounted one episode, in particular, which occurred on March 10, 1998, lasting two hours during which Duffy "lectured [her] relentlessly" as she "sobbed uncontrollably." [34] Throughout this episode, according to Septimus and Yerby, Duffy spoke so angrily and loudly, and pounded his fist on the desk with such force, that the whole office could hear the encounter.[35] Septimus describes feeling "violated" by Duffy's "abusive" conduct.[36]

OGC attorney Bonnie Weisman's encounters with Duffy comprised what she described as "a profound experience in terms of [her] professional life" that shattered her confidence.[37] Specifically, Weisman has detailed an event that occurred at the end of October 1998.[38] According to Weisman, after a staff meeting she approached Duffy and inquired about a change in mail procedure that he had instituted.[39] Allegedly, Duffy was "extremely upset" by her inquiry and "would not stop screaming" and forcefully threw a legal pad down on his desk.[40] Weisman has explained that her interactions with Duffy left her feeling "powerless," "scared to death, and [she] usually left the room crying." [41] As a consequence, Weisman claims she suffered nightmares, loss of appetite, crying spells, and insomnia [42].

Yerby argues that these incidents were significantly disruptive to the office and "made every workday an ordeal." [43] For Yerby personally, the environment had an impact on her physical and mental health. Yerby's medical records from February 1998 indicate that she suffered from crying spells, insomnia, chest tightness, and elevated blood pressure, which the doctor concluded were symptoms of anxiety related to stress on the job.[44]

Yerby has presented evidence tending to show an atmosphere that was demeaning for female employees and significantly disruptive to the work environment. The Court is persuaded that the evidence of harassment presented by Yerby rises to the level of severe or pervasive. Therefore, the Court finds that, based upon the evidence, viewed in a light most favorable to Yerby, a juror could find that Yerby was subjected to a hostile work environment. Accordingly, the Court denies U of H's motion for summary judgment on that issue.

## 2. Retaliation Claim

▪ Yerby also alleges that U of H retaliated against her after she filed a

---

**32.** Dkt. # 25, Exhibit 5, p. 38.

**33.** Dkt. # 25, Exhibit 14, p. 230–31.

**34.** Dkt. # 25, Exhibit 15, ¶ 17.

**35.** Dkt. # 25, Exhibit 15, ¶ 18; Dkt. # 6, p. 111–13.

**36.** Dkt. # 25, Exhibit 15, ¶ 18.

**37.** Dkt. # 25, Exhibit 41, p. 54.

**38.** *Id.* at p. 36.

**39.** *Id.*

**40.** *Id.* at p. 37.

**41.** *Id.* at p. 54, 151.

**42.** *Id.* at p. 206–07.

**43.** Dkt. # 25, p. 28.

**44.** Dkt. # 25, Exhibit 43, p. 143.

complaint of discrimination. In Title VII retaliation cases, the plaintiff must first make a *prima facie* showing that (1) she engaged in activity protected by Title VII, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse action. *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir.2002).

While U of H does not dispute that Yerby engaged in a protected activity, U of H argues that Yerby cannot demonstrate a *prima facie* case of retaliation for two reasons: (1) she cannot show that she suffered an adverse employment action; and (2) she cannot establish a causal link between her complaint and any alleged adverse action.

### a. Whether Yerby suffered an adverse employment action

Yerby contends that two actions taken by U of H constitute adverse employment actions taken against her in a retaliatory manner: (1) demoting Yerby from Business Administrator to Legal Secretary of the OGC; and (2) failing to transfer Yerby to another U of H department.[45] The Court will address each alleged adverse action individually. Yerby first complains that she was demoted in retaliation for filing her discrimination complaint against U of H. The nature of the demotion, Yerby maintains, constitutes an adverse employment action. The Fifth Circuit has held that adverse employment actions for Title VII retaliation purposes include only "ultimate employment decisions ... such as hiring, granting leave, discharging, promoting, and compensating." In addition, the Fifth Circuit has determined that a demotion may constitute an adverse employment action under Title VII. *See Sharp v. City of Houston,* 164 F.3d 923, 933 (5th Cir.1999) ("a demotion is an 'adverse employment action' under both Title VII and § 1983").

Therefore, if Yerby can show that she was in fact demoted, she will successfully establish the second prong of her *prima facie* case for retaliation. The evidence in this case clearly shows, however, that Yerby's official job title, salary, and benefits remained the same after she filed her discrimination complaint. Yet Yerby maintains that "the diminishment of [her] duties and status upon her return from medical leave" effectively amounted to a demotion.[46] Yerby does present evidence that although her job title was not officially changed, her job responsibilities were drastically altered. For example, she went from supervising four employees to being told to report to a secretary she, herself, had previously supervised.[47] Her keys to the office were taken away and she was no longer permitted to attend office staff meetings that she had previously attended.

Indeed, Duffy's own descriptions of Yerby's job responsibilities, before and after her complaint, reflect a significant change. In Yerby's 1998 performance appraisal,

---

**45.** Yerby additionally asserts that she was constructively discharged from her position as business administrator of the OGC. The Court finds, however, that Yerby has failed to present any evidence that the university kept her in that position, pending transfer to another department, as a deliberate effort to force Yerby to resign. Additionally, Yerby has not presented any evidence that she did, in fact, feel compelled to resign. Thus, the Court declines to address Yerby's argument that she was constructively discharged.

**46.** Dkt. # 25, p. 41.

**47.** In her deposition, OGC legal secretary, Jackie Hershey stated, "here [Yerby] had hired me and I had worked under her for a couple of years and now she was having to report to me and it was just an awkward situation." Dkt. # 25, Exhibit 18, p. 57, lines 14–16.

Duffy listed Yerby's primary duties and responsibilities as including tracking and analyzing legal assignments, performing financial and budget accounting, advising on departmental budgets, authorizing fiscal documents related to budget allocations, preparing required financial reports, supervising all personnel and payroll actions, monitoring purchasing and reimbursement related activities, and serving as the liaison between the OGC and other offices in the U of H system.[48] In stark contrast, Duffy's 1999 appraisal of Yerby's job performance lists among her responsibilities word processing, dictation, typing, filing, copying, addressing correspondence, and *assisting office manager.*[49] A comparison of these two university documents highlights a noticeable change in Yerby's job functions from complex budgetary and management coordination to mechanical secretarial work. Duffy's own 1999 statements that Yerby "provides secretarial support" and that "the tasks required for [her] position are, for the most part, mechanical and repetitive," further emphasize this fact.[50] Additionally, Yerby presents evidence that Duffy acknowledged her change in job position when he indicated that "she was welcome to come back into [the] office in the capacity of a legal secretary," rather than in her former position as business administrator.[51]

The Fifth Circuit in *Sharp v. City of Houston* held that a job change "need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting." *Sharp,* 164 F.3d at 933. The evidence here shows that after she filed her discrimination complaint, Yerby assumed a position of markedly less authority and responsibility than she held prior to her filing. Thus, the Court finds that Yerby has raised a genuine fact issue regarding whether she suffered an adverse employment action. Based on the evidence viewed in a light most favorable to Yerby, a reasonable juror could find that, for all practical purposes, Yerby was demoted.

Next, Yerby argues that U of H retaliated against her by not providing her an administrative transfer. Specifically, Yerby maintains that U of H initially promised her an administrative, non-competitive transfer, and then withdrew that offer, forcing her to undergo competitive interviewing for a transfer position, as a means of retaliating against her. While failure to transfer an employee can constitute an adverse employment action,[52] in this case, Yerby was ultimately transferred, and she has failed to present sufficient evidence that the period of delay leading up to her transfer was motivated by retaliation. Indeed, all of the evidence presented points to non-retaliatory reasons for the delay. Notably, U of H made its offer for an administrative transfer to Yerby *after* she filed her discrimination complaint.[53] This fact indicates that Yerby's complaint had *no effect* on U of H's decision whether to transfer her to another department. Moreover, Yerby has not put forth any evidence that U of H interfered

---

48. *See* 1998 University of Houston Staff Performance Appraisal, Dkt. # 25, Exhibit 23.

49. *See* 1999 University of Houston Staff Performance Appraisal, Dkt. # 25, Exhibit 24.

50. *Id.*

51. Dkt. # 25, Exhibit 18, p. 55, lines 15–17.

52. *See, e.g., Morgan,* 122 S.Ct. at 2073.

53. Yerby filed her internal complaint with the University Affirmative Action Office on March 27, 1998. On May 29, 1998, Dr. Arthur Smith, Chancellor of the U of H System, sent a memorandum to Yerby, in which he acknowledged Yerby's complaints and explained to her that U of H "would be willing to try to find a position in some other area that would be suited to [her] qualifications and experience." Dkt. # 22, Exhibit N.

in any way in her attempts to interview for and obtain lateral positions in other university departments. Instead, U of H maintains that Yerby was not chosen for other positions because she was not the most qualified candidate. Yerby has failed to raise a genuine fact issue as to whether U of H's reason for the delay was pretextual.[54] Accordingly, the Court declines to further consider that U of H's delay in transferring her to another department constituted retaliation.

### b. Whether there is a causal link between Yerby's complaint and any adverse action

 Because the Court finds that Yerby has raised a fact issue regarding whether she was demoted, the Court will next address whether, based on the evidence, a reasonable juror could find a causal link between Yerby's filing of her discrimination complaint and the alleged demotion.

 As the Fifth Circuit has noted, "the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's *prima facie* case—whether a *causal* link exists between the adverse employment action and the protected activity." *Long v. Eastfield Coll.,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (emphasis in original). However, the two questions have quite different standards of proof. *Id.* The standard for establishing the "causal link" element of the plaintiff's *prima facie* case is much less stringent than the ultimate "but for" standard necessary to prevail in a Title VII case. *Id.; see also Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir.2002); *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir.2001). "[A] plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a *prima facie* case." *Long,* 88 F.3d at 305 n. 4 (citing *De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 857 n. 12 (5th Cir.1982)); *see also Evans,* 246 F.3d at 354. A plaintiff merely needs to show some connection between the protected activity and the adverse employment action in order to establish a *prima facie* case of retaliation.

To be sure, "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case." *Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir.2002). However, the Fifth Circuit has suggested that, in a Title VII retaliation case, an inference of causation may be drawn if the plaintiff puts forth evidence of the employer's knowledge of the protected activity, plus shows a temporal proximity of that knowledge and the adverse employment action. *See Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 435, n. 23 (5th Cir.1995) (citing *Payne v. McLemore's Wholesale & Retail*

---

**54.** Yerby argues that she was not hired for a position in the Information Technology department because the decisionmaker, Chuck Shomper, was improperly influenced by Duffy. However, Yerby fails to provide sufficient evidence indicating that Duffy had any control or leverage over the decision not to hire Yerby for the IT position.

Yerby also insists that she was improperly denied a position in the Administration and Finance department. However, U of H has shown that another candidate was hired based, in part, on the diverse nature of the group in which that candidate had previously been working (experience which Yerby did not have). Yerby has failed to present evidence tending to show that U of H's proffered reason for the decision is false or pretextual. That U of H did not explicitly state that it was seeking a candidate for the position who had worked in a diverse group does not automatically prohibit U of H from considering that factor when making its decision.

*Stores,* 654 F.2d 1130, 1141 (5th Cir.1981)). Again, the Court notes that it is required to draw all reasonable inferences in favor of the non-movant on a summary judgment motion.

Here, Yerby points to the chronology of events as evidence that her complaint was causally connected to her demotion. The evidence shows that on March 31, 1998, Duffy was informed that Yerby had filed a complaint against him.[55] It is undisputed that Yerby complained of discrimination on March 27, 1998, went out on worker's compensation leave shortly thereafter on April 6, 1998, and returned to work in August 1998 to find her job responsibilities significantly altered. Yerby argues, "that Duffy demoted her the very day she returned [from medical leave] is striking evidence of causation." [56]

The Fifth Circuit has additionally noted that close timing "may provide the 'causal connection' required to make out a prima facie case of retaliation," and that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans,* 246 F.3d at 354. The Court recognizes that the time lapse in *Evans v. City of Houston* was only five days, and that the five month period here is a much longer span of time than five days. However, the Court believes that Yerby has sufficiently accounted for the time span between her complaint and her alleged demotion: the time she was out on worker's compensation leave. Drawing all reasonable inferences in favor of Yerby, a reasonable juror could find the existence of a causal link between her complaint and her alleged demotion based on the timing of the events in this case. Therefore, there is a genuine issue of material fact regarding the exis-

tence of a causal link and it would be inappropriate to grant summary judgment in favor of U of H based on this element.

### c. Whether U of H's proffered reason is pretextual

The Fifth Circuit has instructed that ultimately, to prove a retaliation case, the plaintiff must establish that "but for the protected activity, the adverse employment action would not have occurred." *Mota,* 261 F.3d at 519; *see also Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999). Once the plaintiff establishes the *prima facie* case, the burden of producing some non-retaliatory reason for its action falls upon the defendant. *Harvey v. Chevron USA, Inc.,* 961 F.Supp. 1017, 1032 (S.D.Tex.1997). Then, if the plaintiff presents additional evidence that the reason given by the employer for the adverse action is false or pretextual, "a jury may infer the existence of retaliation." *Mota,* 261 F.3d at 519–520 (citing *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097).

Here, U of H explains that Yerby's job assignments were modified after Yerby returned from leave only in order to comply with Yerby's own request that she have little direct contact with Duffy. U of H maintains that Yerby made this request during a meeting held in mid to late August between Yerby, Duffy, and Vice Chancellor for Human Resources Robert Herrington. According to U of H, Yerby's former duties, such as budget decision-making, supervising secretaries, scheduling attorney meetings, among others, required her to have direct contact with Duffy. U of H claims that only those responsibilities requiring direct contact with Duffy were re-assigned, in an effort to honor Yerby's wishes.

---

**55.** Duffy was informed of Yerby's complaint by Deborah McElvaney, in the course of conducting her internal investigation. McElvaney additionally offered to transmit a copy of

Yerby's complaint to Duffy. *See* Dkt. # 25, Exhibit 1.

**56.** Dkt. # 25, p. 47.

In response, Yerby has attempted to show that U of H's proffered reason for the alleged demotion is pretextual. First, Yerby puts forth evidence putting her alleged request in context. Specifically, Yerby points to Duffy's account of the August meeting. In his deposition, Duffy claims that he asked Yerby the following question: "Sue, you would prefer not to communicate with me; isn't that right?" [57] To which Yerby allegedly "gave a response that indicated to [Duffy] that she did not disagree with that characterization." [58] In view of their previous working relationship, a reasonable juror, who believed that such a conversation occurred, could find that Yerby had little choice but to answer affirmatively to her supervisor's question. Second, Yerby insists that she never stated unequivocally that she would not communicate with Duffy. Clarifying her request, Yerby stated in her deposition that she was willing to have contact with Duffy so long as he was not abusive toward her.[59]

Third, Yerby maintains that her alleged request to avoid direct contact with Duffy could not have been the reason for her demotion; the timing of events belies U of H's assertion. According to Yerby, Duffy made his decision to demote her before he ever met with her in August, before she could have asked for less contact. As evidence of Duffy's prior decision, Yerby points to statements made by Jackie Hershey in her deposition, in which she indicates that Duffy told her, in advance of the August meeting, that Yerby would be coming back to the OGC office as a legal secretary, rather than as a business ad-ministrator.[60] In light of that evidence, a reasonable juror could find that Duffy made the decision to alter Yerby's job assignments prior to the August meeting, and not in response to any request by Yerby for limited contact.

The Court finds that, drawing all inferences in Yerby's favor, Yerby has provided enough evidence to create a genuine fact issue as to whether U of H's proffered reason for the alleged demotion was pretextual. For the reasons explained above, U of H's motion for summary judgment as to Yerby's retaliation claim is denied.

### Conclusion

After careful consideration of the parties arguments, the evidence, and the applicable law, for the foregoing reasons, the Court hereby DENIES Defendants' Motion for Summary Judgment.

---

57. Dkt. # 22, Exhibit S, p. 61.

58. *Id.*

59. *See* Dkt. # 22, Exhibit E, ¶ 20–21.

60. Dkt. # 25, Exhibit 18, p. 56, lines 1–15. Additionally, Yerby directs the Court's atten-tion to the deposition of Dr. Herrington, Dkt. # 25, Exhibit 7, p. 65–66, in which Dr. Herrington agrees that he concluded that, prior to Yerby's first day of work, Duffy had decided that "Yerby was not going to be coming back to work in her job as business administrator."