# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

_____

No. 96-11568
_____

KAREN WEBB,

Plaintiff-Appellant,

VERSUS

CARDIOTHORACIC SURGERY ASSOCIATES OF NORTH TEXAS, P.A.; MICHAEL MACK, M.D.,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Northern District of Texas
_____

April 30, 1998

Before DAVIS, WIENER, and PARKER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Karen Webb appeals the district court's grant of summary judgment to Defendants, Cardiothoracic Surgery Associates of North Texas, P.A. and Dr. Michael Mack, dismissing her claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm.

I.

Karen Webb began working for Cardiothoracic Surgery Associates of North Texas, P.A. ("CSANT") as an insurance clerk in April of 1986. Webb worked in the Dallas area at the Medical City facility. After approximately one year, CSANT gave her a new position scheduling surgery for the physicians, one of whom was Dr. Michael Mack. She worked in this position for approximately four years

until the spring of 1991, at which time she began working as Mack's secretary.

Webb worked for Mack exclusively until late 1992 when she took on the additional duties of Office Manager at the Medical City facility. In the fall of 1993, CSANT determined that Webb's dual roles were too much for one person and asked her to choose one position. She elected to take the office manager position. Webb contends that she chose the office manager position in an effort to reduce her contact with Mack.

Webb alleges that Mack began sexually harassing her in the spring of 1991, when she began working as his secretary. She asserts that Mack continued this conduct until January of 1995, when she told Lori Swalm, CSANT's Director of Human Resources, about Mack's behavior. Mack's offensive conduct included touching Webb on the shoulder when he spoke to her and standing so close to her that he would rub against her shoulder. Webb admits, however, that she initially did not consider this "touching" to be intentionally offensive or sexual in nature.

In January of 1993, both Webb and Mack, together with other CSANT personnel, attended a business meeting in San Antonio. According to Webb, late one evening at a bar Mack approached her, hugged her, and whispered his hotel room number into her ear several times. Mack allegedly asked Webb to meet him there. Later, after everyone had left the bar and returned to the hotel, Mack telephoned Webb in her room and asked why she had not come to his room. Webb then promised Mack that she would indeed come to his room. However, she never went to Mack's room. Neither Mack

2

nor Webb ever discussed anything related to this incident again. Nor did Webb complain about this incident; rather, she remained silent in the hope that by ignoring "it," the situation would "go away."

In February of 1993, Mack called Webb into his office. According to Webb, Mack asked her to close the door to the office and to sit on his side of the desk. Webb complied with this request. Mack then discussed several problems that he was having related to CSANT and conveyed to Webb that he was "feeling down." Apparently in an attempt to empathize with Mack, Webb then told him about her pending separation from her husband. After discussing issues relating to Webb's personal finances, Mack asked Webb about her home mortgage. Webb told Mack that she would probably have to refinance her mortgage because of the separation. Mack responded by telling Webb not to worry about money because he would give her money without anyone else knowing. Webb then stood to leave, at which time Mack thanked her for listening and allegedly placed his hand on her leg and touched the inside of her thigh under her skirt.

Before January of 1995, Webb had not complained to any CSANT personnel regarding Mack's behavior. Almost two years after the incidents in January and February of 1993, Lori Swalm asked Webb to "fill in" temporarily as Mack's secretary. Webb declined this request and proceeded to tell Swalm about the San Antonio incident in partial explanation for why she did not want to have close contact with Mack. Webb concedes that Swalm was very sympathetic to her complaint and did not insist that Webb work closely with

3

Mack. After this conversation, Swalm instituted a specific sexual harassment policy for CSANT and the CSANT doctors participated in some training about sexual harassment.[1] Webb also concedes that Mack's offensive touching ceased after her conversation with Swalm.

As office manager, Webb continued to have some contact with Mack and, according to Webb, that relationship did not improve. Webb alleges that Mack was rude to her both in person and on the telephone and belittled her in front of patients and coemployees. In April of 1995, Mack confronted Webb outside an examining room, where, according to Webb, he spoke to her in a very demeaning and belittling tone and threw a magazine at the floor in front of her. Apparently, this was in response to Mack's frustrations over repeated requests that magazines not be put on his desk. Shortly after this incident, Webb called the office and reported that she was sick. On the advice of her attorney, she never returned to work. CSANT placed Webb on a leave of absence while it investigated her complaint.

After concluding its investigation, CSANT offered to move Webb to a comparable position in its Plano office. CSANT also offered to have all of Mack's patients report to another location so that Mack would never be required to visit the Plano office. For a variety of reasons, Webb declined the offer.[2] Webb formally

---

[1] Prior to this time, CSANT had only a general anti-harassment policy delineated in its employee handbook. The policy designated Lori Swalm as the CSANT employee to be contacted by other employees with complaints about harassment.

[2] Webb stated that she did not believe that Mack would move his patients from the Plano office. Webb further stated that she was "horribly embarrassed and humiliated" that CSANT personnel knew what had happened.

4

resigned effective June 30, 1995 and promptly filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") on July 17, 1995. After obtaining a notice of right to sue from the EEOC, Webb filed suit against CSANT and Dr. Michael Mack, alleging that she was subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Webb also asserted a claim under Texas law for intentional infliction of emotional distress. Following discovery, the Defendants filed a Motion for Summary Judgment, which the district court granted, resulting in the dismissal of Webb's suit. This appeal followed.

II.

A.

The standard of review following the grant or denial of summary judgment is *de novo*. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct 2548, 2553 (1986). Summary judgment is proper if the evidence shows the existence of no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). While we consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, Coleman, 113 F.3d at 533, the nonmoving party must come forward with

5

specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct at 2553. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Szabo v. Errisson, 68 F.3d 940, 942 (5th Cir. 1995).

B.

In granting summary judgment for the Defendants, the district court reasoned that: (1) Dr. Mack could not be held individually liable because he did not qualify as an "employer" under Title VII; (2) the incidents in January and February of 1993 were time barred; (3) CSANT took prompt remedial action as a matter of law with respect to Webb's claims of sexual harassment; (4) Webb failed to show a causal connection between her complaints of and opposition to Mack's conduct and any adverse employment action so as to establish retaliation; and (5) Mack's conduct did not rise to the level of "outrageous conduct" in order to state a claim under Texas law for intentional infliction of emotional distress. We consider below Webb's arguments challenging the correctness of the district

6

court's ruling.[3]

C.

Initially, Webb challenges the district court's conclusion that the incidents in January and February of 1993 were time-barred. Webb argues that the district court erred when it found that these incidents were discrete acts of discrimination which triggered the start of the relevant limitations period. Webb contends that these incidents were part of a continuing violation and should not have been considered time-barred.

A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see also Berry v. Board of Supervisors of L.S.U., 715 F.2d 971 (5th Cir. 1983). However, if the plaintiff has "instituted proceedings with a State [sic] or local agency with authority to grant or seek relief from such practice," the limitations period for filing a charge with the EEOC extends to 300 days. 42 U.S.C. § 2000e-5(e)(1); see also Griffin v. City of Dallas, 26 F.3d 610 (5th Cir. 1994). Because Webb instituted proceedings with the TCHR, the relevant period of limitations on her claims is 300 days. See Griffin, 26 F.3d at 612-13.

---

[3] The district court granted summary judgment in favor of Dr. Mack on the ground that he was not an employer within the meaning of Title VII and therefore had no individual liability. The grant of summary judgment also included the dismissal of Webb's state law claim of intentional infliction of emotional distress. Webb has not briefed either issue. Thus, we consider these issues not "presented for review" under Fed. R. App. P. 28(a)(4) and consequently waived. Carmon v. Lubrizol Corp., 17 F.3d 791, 794 (5th Cir. 1994) (per curiam); accord American States Ins. Co. v. Bailey, 133 F.3d 363, 372 (5th Cir. 1998); Atwood v. Union Carbide Corp., 847 F.2d 278, 279-80 (5th Cir. 1988).

7

Congress intended the limitations period contained in § 2000e-5(e)(1) to act as a statute of limitations. <u>Zipes v. Trans World Airlines, Inc</u>, 455 U.S. 385, 393-94, 102 S. Ct. 1127, 1132-33 (1982); <u>see also</u> <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553, 558, 97 S. Ct. 1885, 1889 (1977) ("A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed."). A Title VII plaintiff who has instituted proceedings with a state or local agency cannot sustain a claim of sexual harassment based upon incidents that occurred more than 300 days before the filing of a charge of discrimination. <u>See</u> <u>Messer v. Meno</u>, 130 F.3d 130, 134 (5th Cir. 1997). Webb filed her initial charge of discrimination on July 17, 1995. Thus, she may only recover under Title VII for conduct that occurred after September 20, 1994, 300 days before the filing of her charge.

Webb argues that Mack's conduct in January and February of 1993 should be considered even though it occurred more than 300 days before her charge of discrimination was lodged because this conduct was part of a continuing violation. Courts have utilized the theory of a continuing violation in certain exceptional circumstances when applying the limitations period contained in § 2000e-5(e)(1). <u>See</u> <u>Messer</u>, 130 F.3d at 134-35. This equitable exception arises "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." <u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 474 (5th Cir. 1989) (quoting <u>Abrams v. Baylor College of Medicine</u>, 805 F.2d 528, 532 (5th Cir. 1986)). Application of this theory relieves a

8

Title VII plaintiff from the burden of proving that the entire violation occurred within the actionable period provided the plaintiff can show a series of related acts, one or more of which falls within the limitations period. Messer, 130 F.3d at 134-35.

The district court concluded that the events of January and February of 1993 should have put Webb on notice that she was a victim of sexual harassment without the necessity of learning additional facts. Consequently, the district court rejected Webb's argument that Mack's conduct was part of a series of related acts constituting a continuing violation. We agree. As we have previously stated,

> [t]he core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1560-61 (5th Cir. 1985) (citations omitted); see also Berry, 715 F.2d at 981.[4]

Here, the summary judgment evidence reflects that Webb was immediately aware of the severity of Mack's conduct in January and

---

[4] Other circuits share this view. See, e.g., Speer v. Rand McNally & Co., 123 F.3d 658, 663-64 (7th Cir. 1997) (refusing to apply continuing violation theory when plaintiff knew the nature of the discriminatory acts); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996) ("The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action."); Sabree v. United Bhd. of Carpenters and Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir. 1990) ("A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.").

February of 1993. The district court based its decision on Webb's own deposition testimony describing her perception of Mack's conduct. Webb stated that she knew that Mack's January 1993 conduct was sexual in nature when he tried to get Webb to come to his hotel room in San Antonio. Further, she stated that she was offended by his behavior. Webb also understood Mack's conduct at the February 1993 meeting to be a sexual gesture. After this meeting, Webb was "shocked and frightened." Even if the January incident at the bar and hotel in San Antonio was insufficient to put Webb on notice that her employment might be affected by Mack's conduct, when the incident in Mack's office occurred only weeks later, Webb was on notice that Mack's conduct would affect her employment. Based on this factual predicate, we agree with the district court that Webb needed no additional facts after these two encounters to understand that Mack was sexually harassing her. Webb's full knowledge of Mack's acts in January and February of 1993 therefore triggered Webb's duty to assert her rights.

In summary, Webb was aware and knew of facts in February of 1993 that were supportive of a Title VII charge of an unlawful employment practice. The district court correctly found that no genuine issues of material fact existed with respect to Webb's knowledge and understanding of Mack's conduct. Webb therefore cannot rely on the equitable exception of a continuing violation and the district court correctly concluded that Mack's conduct prior to September 20, 1994 was time-barred.

D.

Webb next challenges the district court's determination that

10

CSANT took prompt remedial action that insulated it from liability on Webb's hostile work environment claim.

When an employee complains of a hostile work environment, an employer may insulate itself from Title VII liability by taking prompt action to remedy the complaint. Hirras v. National R.R. Passenger Corp., 95 F.3d 396, 399 (5th Cir. 1996); see also Waymire v. Harris County, 86 F.3d 424 (5th Cir. 1996); Nash v. Electrospace Sys., Inc., 9 F.3d 401 (5th Cir. 1993). In her appeal, Webb argues that CSANT, through Mack, was on notice in February of 1993 that she was being subjected to a hostile work environment. Essentially, Webb argues that notice to Mack in January and February of 1993 that his sexual overtures were unwelcome constituted notice to CSANT of an unlawful employment practice. Although Webb does not challenge the adequacy of CSANT's responses in January of 1995, she argues that this response was not prompt as a matter of law. Assuming without deciding that notice to Mack served as notice to CSANT, the summary judgment evidence does not demonstrate that Webb ever gave notice to Mack that she considered his conduct to be unwelcome sexual harassment.[5]

As we stated above, Webb may only complain of conduct that occurred during the actionable period, that is after September 20, 1994. Webb never made complaints to Mack about his behavior during this time period. More particularly, Webb did not tell Mack not to stand close to her, or not to brush against her when he spoke with

---

[5] Because the summary judgment evidence does not show that Webb gave notice to Mack that his conduct was unwelcome, we need not decide the difficult question of whether it is proper to impute the actions and knowledge of Dr. Mack, a founder, officer, and executive committee member of CSANT, to Webb's employer.

11

her, or that his conduct made her uncomfortable. The first complaint Webb made was to Lori Swalm in January of 1995. Once she complained to Ms. Swalm, Webb concedes that Mack's offensive conduct stopped. We agree with the district court that based upon the summary judgment evidence, CSANT took prompt remedial action as a matter of law.

Webb argues that she complained to Mack as early as January of 1993. Essentially, Webb alleges that her refusal to go to Mack's hotel room was an implied complaint which put Mack on notice that his conduct was unwelcome. Even if this refusal could constitute a complaint, the incident in January of 1993 is time-barred. A complaint about time-barred conduct does not satisfy the employee's duty. The employee must complain about the actionable conduct so that the employer will have an opportunity to remedy the unlawful employment practice. Webb does not point to any summary judgment evidence from which we could infer that Webb "complained" of Mack's post-September 20, 1994 conduct.[6]

### E.

With respect to Webb's quid pro quo claim, we elect to affirm the grant of summary judgment on a different ground than that relied upon by the district court. See Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 363 (5th Cir. 1995); Thompson v. Georgia Pac. Corp., 993 F.2d 1166, 1167 (5th Cir. 1993).

---

[6] Webb also argues for the first time on appeal that CSANT had constructive knowledge that Mack's behavior was unwelcome. We do not consider arguments advanced for the first time on appeal. Moreover, we find no summary judgment evidence that anyone other than Webb and Mack could have known of the complained of conduct between September 20, 1994 and January of 1995.

To succeed in a quid pro quo claim, a plaintiff must show that the harassment complained of affected tangible aspects of the compensation, terms, conditions, or privileges of employment. Jones v. Flagship Int'l., 793 F.2d 714, 722 (5th Cir. 1986); accord Sanders v. Casa View Baptist Church, 134 F.3d 331, 339 (5th Cir. 1998). Webb argues that Mack treated her rudely by shouting at her and throwing a magazine at her feet and that this constitutes a tangible job detriment. We disagree. Webb does not complain that her pay was affected, that her job duties changed in a negative way, or that she failed to receive a promotion she sought. Webb was promoted to the position of Office Manager in the fall of 1993 and remained in that position until she resigned in June of 1995. Mack's evaluations of Webb's work remained consistently high. Although Mack was frequently rude and abrasive to Webb and other CSANT employees, to state a claim for quid pro quo sexual harassment Webb must do more than simply demonstrate that Mack was a rude or uncivil boss.[7]  See Sanders, 134 F.3d at 339 (finding mild criticism of work and threats of not being promoted to positions that did not exist insufficient to constitute tangible job detriment); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296-97 (3d Cir. 1997) ("[N]ot every insult, slight, or unpleasantness gives rise to a valid Title VII claim."); Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1552-53 (11th Cir. 1997) (finding behavior consisting of criticizing aspects of

---

[7]  The Supreme Court has recently cautioned against the expansion of Title VII into a general civility code. Oncale v. Sundowner Offshore Servs., Inc., --- U.S. ---, 118 S. Ct. 998, 1002-03 (1998).

13

plaintiff's job performance to be insufficient to constitute quid pro quo harassment).

Alternatively, Webb argues that her resignation in June of 1995 amounted to a constructive discharge and that she thereby suffered a tangible job detriment. Once again, we disagree. In order to prove constructive discharge, Webb must establish that working conditions at CSANT were so intolerable that a reasonable employee in her position would feel compelled to resign. Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). As the district court noted, "[p]art of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987) (quoting Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)).

The summary judgment evidence reflects that CSANT took prompt remedial action to prevent any future harassment. This factor alone is fatal to Webb's claim of constructive discharge. Dornhecker, 828 F.2d at 310 ("Because [the employer's] prompt response was the antithesis of 'inaction,' [the plaintiff] was not constructively discharged."); see also Landgraf v. USI Film Prods., 968 F.2d 427, 429-30 (5th Cir. 1992). In addition to requiring Mack to end his offensive conduct, CSANT offered to transfer Webb to its Plano office and to take steps to ensure that Webb would have no contact with Mack. Although Webb subjectively believed that Mack would not honor such an agreement, she showed no reasonable basis for this belief. We agree with the district court that Webb's exposure to a rude, demanding boss such as Mack did not

14

render her employment intolerable so as to support a claim of constructive discharge. It follows that Webb's quid pro quo claim must fail because she did not suffer a tangible job detriment.

F.

Finally, Webb challenges the district court's rejection of her retaliation claim. To establish a claim for retaliation, Webb must prove (1) that she engaged in protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between the participation in the protected activity (her complaints of Mack's behavior) and the adverse employment action. Messer, 130 F.3d at 140. In a claim for retaliation under Title VII, we are concerned only with ultimate employment decisions, including hiring, discharging, promoting, compensating, or granting leave, and not "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Mattern v. Eastman Kodak Co., 104 F.3d 702, 707-08 (5th Cir. 1997); accord Messer, 130 F.3d at 140; Munday v. Waste Management of North Am., Inc., 126 F.3d 239, 243 (4th Cir. 1997).

Webb argues that Mack's rude treatment of her constitutes an adverse employment action that is causally connected to her resistance to Mack's advances. For the reasons stated above, Mack's conduct in treating Webb rudely and uncivilly does not amount to an adverse employment action. Moreover, we agree with the district court that Webb failed to present summary judgment evidence linking her complaints about Mack's conduct to any adverse employment action. Again, Webb stated in her deposition testimony and conceded in her brief that Mack began to treat her as he did

15

the rest of the CSANT staff after she ceased being his secretary in the fall of 1993. She points to no specific summary judgment evidence supporting her claim that Mack treated her worse after she complained to Lori Swalm in January of 1995. The district court correctly concluded that no summary judgment evidence linked Mack's rude treatment of Webb to her complaint about an unlawful employment practice. Therefore, the district court correctly granted summary judgment on this issue.

### III.

For the reasons stated above, we conclude that the district court correctly determined that no genuine issues of material fact existed and that the Defendants were entitled to summary judgment dismissing Webb's Title VII and state law claims. We therefore AFFIRM the district court's judgment in all respects.

AFFIRMED.