Rebecca S. BLANCHET, Plaintiff,

v.

CHEVRON/TEXACO CORPORATION, Chevron Environmental Management Company, and Chevron USA Inc., Defendants.

No. CIV.A. 1:04CV0216.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 10, 2004.

Louis Claiborne Dugas and Michael, Jacobellis of Clay Dugas & Associates, Beaumont, TX, for Plaintiffs.

Malone M. Lankford and Steve Randolph, McCown of Littler Mendelson, PC, Dallas, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court is Defendant Chevron Environmental Management Company's ("Chevron") Motion to Dismiss Plaintiff's Second Amended Complaint (# 14) for lack of subject matter jurisdiction. Chevron seeks dismissal of Plaintiff Rebecca S. Blanchet's ("Blanchet") claims of sexual discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000h–6. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that dismissal should be granted in part and denied in part.

### I. *Background*

Blanchet was employed by Zachary Construction Company ("Zachary") as a materials manager assigned to Chevron's Port Arthur Remediation Team from September 1995 to January 3, 2003. Zachary, based in San Antonio, Texas, is a contractor for Chevron.

Blanchet alleges that in "mid to late October 2002," her supervisor, Steve McQueen ("McQueen"), showed her a cookbook with an offensive title, commented about his sexual exploits with his girlfriend, and made an offensive telephone call from her office. Additionally, Blanchet claims that McQueen made inappropriate remarks to coworkers and told "off-color" and sexual jokes in her presence. Subsequently, on January 3, 2003, upon the expiration of Zachary's contract with Chevron, Blanchet's employment was terminated.

On October 1, 2003, Blanchet filed an unverified charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") against Chevron, alleging sexual harassment on the part of McQueen. The EEOC charge states that McQueen "passed out a cookbook with an offensive title. Made remarks about his sexual encounters with his girlfriend, made an offensive call from my office to his girlfriend." On the charge information sheet related to the charge, Blanchet states that the date she learned of the alleged discrimination was "mid to late October 2002." The EEOC charge itself, however, sets forth no dates as to when the purported harassment occurred. Additionally, when asked to identify the types of discrimination alleged, Blanchet checked the "other (specify)" box and wrote in sexual harassment, but she did not mark the "retaliation" box on the charge.

On October 31, 2003, Blanchet filed an amended, verified charge with the EEOC and the Texas Commission on Human Rights ("TCHR"), alleging sexual discrimination against Chevron and McQueen. The verified charge recites the same alleged acts of discrimination as the October 1, 2003, charge, stating:

I. While working as a Procurement Clerk for Port Arthur Remediation Team controlled by Chevron/Texaco, I was subjected to unwelcome conduct of a sexual nature. On or about October 15, 2002, I was shown an offensive cook book. During October 2002 to January 3, 2003, I was subjected to comments of a sexual nature which created a hostile work environment. I complained to the Project Manager David Craig of Chevron Texaco and Kathy Robinson, Contract Coordinator and Gloria Delgadillo, Auditor.

II. No specific reason was given for [the] sexual conduct. Steve McQueen, Field Engineer Manager, Chevron/Texaco was responsible for the offensive conduct of a sexual nature. Mr. McQueen did not create a hostile work environment for male employees.

III. I believe I was discriminated against because of my sex, female, due to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Blanchet listed the earliest date discrimination took place as October 15, 2002, and the latest as January 3, 2003, the date her employment was terminated. Additionally, Blanchet marked the "sex" box on the charge but did not check the "retaliation" box.

On January 30, 2004, the EEOC issued Blanchet a "Notice of Right to Sue," authorizing her to institute a civil action in the appropriate district court within ninety days of receipt. Blanchet initiated this lawsuit in the 58th Judicial District Court of Jefferson County, Texas, on March 11, 2004, alleging sex discrimination and retaliation under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.051. Pursuant to 28 U.S.C. §§ 1441, 1446(a), the case was removed to federal court on April 14, 2004, on the basis of diversity of citizenship between the parties. *See* U.S.C. § 1332.

On August 5, 2004, Chevron filed its motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, seeking dismissal of Blanchet's TCHRA claim for lack of subject matter jurisdiction based on her failure to file the charge within the statutorily required 180 days from the latest alleged discrimination. *See* FED. R. CIV. P. 12(b)(1); TEX. LAB. CODE ANN. § 21.202. In response, on August 17, 2004, Blanchet filed her second amended complaint, withdrawing the TCHRA claim and adding sexual discrimination and retaliation claims under Title VII. *See* 42 U.S.C. § 2000e–5.

Subsequently, on August 26, 2004, Chevron filed its motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, seeking dismissal of Blanchet's Title VII claims on the ground that her EEOC charge was not timely filed. The court afforded the parties an opportunity to submit additional briefs and materials in support of or in opposition to the motion. Blanchet filed a sworn affidavit describing the alleged discriminatory acts. Chevron filed a supplemental brief, arguing that, in addition to Blanchet's sexual discrimination claim being time-barred, her retaliation claim should be dismissed for failure to exhaust administrative remedies.

## II. *Analysis*

### A. *Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)*

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). " 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.' " *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81

F.3d 1182, 1187 (2d Cir.1996)); *see John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir.2000). Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, lack the power to adjudicate claims. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery*, 243 F.3d at 919.

 The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001), *cert. denied*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002); *Howery*, 243 F.3d at 916; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir.2000); *Stockman*, 138 F.3d at 151; *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir.1997). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996) (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984)); *accord Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673).

 "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th

Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)); *accord Ramming*, 281 F.3d at 161; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997). Nevertheless, all uncontroverted allegations in the complaint must be accepted as true. *See Den Norske Stats Oljeselskap As*, 241 F.3d at 424; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Cloud v. United States*, 126 F.Supp.2d 1012, 1017 (S.D.Tex.2000), *aff'd*, 281 F.3d 158 (5th Cir.2001), *cert. denied*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002). Thus, when examining a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), unlike a motion to dismiss under Rule 12(b)(6), the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Ramming*, 281 F.3d at 161; *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986); *Williamson*, 645 F.2d at 413; *Cloud*, 126 F.Supp.2d at 1017.

█ It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Williamson*, 645 F.2d at 413. "Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations." *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n. 1 (5th Cir.1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511–12 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct.

358, 66 L.Ed.2d 217 (1980). The court must always be mindful, however, of " " "the first principle of federal jurisdiction;" ' " which requires a federal court to dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151 (quoting *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994) (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 835 (2d ed.1973))).

█ "Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir.1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)); *see Williamson*, 645 F.2d at 412; *Menchaca*, 613 F.2d at 511. " 'Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." ' " *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see Williamson*, 645 F.2d at 412. When a facial attack is involved, as with a motion under Rule 12(b)(6), "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir.1992)).

█ " ' "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." ' " *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see*

*Williamson,* 645 F.2d at 413. "On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Garcia,* 104 F.3d at 1261 (citing *Lawrence,* 919 F.2d at 1529). If the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action:

> [T]he trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977))) (internal quotations omitted).

In its motion to dismiss, Chevron launches a factual attack of Blanchet's Title VII claims of sexual discrimination and retaliation, arguing that subject matter jurisdiction is lacking. Chevron contends that Blanchet's Title VII sexual discrimination claim is barred by the statute of limitations and her retaliation claim is precluded due to her failure to exhaust administrative remedies.

### B. *Title VII Statute of Limitations*

██ In Texas, because there is a state agency with the authority to grant or seek relief for discriminatory employment practices, in order to maintain a Title VII claim, a plaintiff must file her charge of discrimination with the EEOC within "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *see National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir.2003); *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 424 (5th Cir.2000); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.,* 139 F.3d 532, 537 (5th Cir.1998); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999). Generally, the limitations period begins on the date the discriminatory act occurred, and a plaintiff cannot sustain her claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination. *See Morgan,* 536 U.S. at 110, 122 S.Ct. 2061; *Webb,* 139 F.3d at 537; *Messer,* 130 F.3d at 134. When considering whether discriminatory acts that fall outside of the limitations period are actionable under Title VII, the United States Supreme Court has distinguished claims alleging discrete discriminatory acts from those alleging a hostile work environment. *See Morgan,* 536 U.S. at 110, 122 S.Ct. 2061; *see also Pegram v. Honeywell, Inc.,* 361 F.3d 272, 278–79 (5th Cir.2004).

### 1. *Discrete Acts*

In *Morgan,* the Court noted that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" 536 U.S. at 110, 122 S.Ct. 2061. "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.; see Pegram,* 361 F.3d at 279; *Brown v. Farmers Ins. Exch.,* No. Civ. A. SA 02:CA:1032–XR, 2004 WL 952396, at *3 (W.D.Tex. May 3, 2004). Certain discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire,

are "easy to identify." *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061. Although not an exhaustive list, each discrete act "constitutes a separate actionable unlawful employment practice." *Id.; see Pegram*, 361 F.3d at 280 n. 5.

■ "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061; *see Pegram*, 361 F.3d at 279. Hence, "claims based on discrete acts are timely only where such acts occurred within the limitations period." *Id.* Moreover, "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 112, 122 S.Ct. 2061; *see Pegram*, 361 F.3d at 279. Any act occurring outside the applicable filing period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *see Morgan*, 536 U.S. at 112, 122 S.Ct. 2061; *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n. 12 (5th Cir.1995).

■ The 300–day limitations period is subject to waiver, estoppel, and equitable tolling. *See Morgan*, 536 U.S. at 113, 122 S.Ct. 2061; *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir.), *cert. denied*, 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992). These equitable doctrines, however, should be applied sparingly. *See Morgan*, 536 U.S. at 113, 122 S.Ct. 2061 (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). The Supreme Court has observed that " 'strict adherence to the procedural requirements

specified by the legislature is the best guarantee of evenhanded administration of the law.' " *Morgan*, 536 U.S. at 108, 122 S.Ct. 2061 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

### 2. *Hostile Work Environment*

■ "In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment," which " 'will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period.' " *Pegram*, 361 F.3d at 279 (quoting *Morgan*, 536 U.S. at 122, 122 S.Ct. 2061). The very nature of a hostile work environment claim involves repeated conduct, which is "different in kind from discrete acts." *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Id.* at 117, 122 S.Ct. 2061 (quoting 42 U.S.C. § 2000e-(5)(e)(1)). "In determining whether an actionable hostile work environment claim exists, [the courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* at 116, 122 S.Ct. 2061 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ A hostile work environment claim is subject to an equitable exception "when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram*, 361 F.3d at 279; *see also Morgan*, 536 U.S. at 117, 122 S.Ct. 2061; *Frank*, 347 F.3d at 136; *Webb*, 139 F.3d at 537. In order to extend

the statute of limitations under this exception, known as a continuing violation, the plaintiff must show a series of related acts, one or more of which falls within the 300-day limitations period. *See Morgan,* 536 U.S. at 117, 122 S.Ct. 2061; *Pegram,* 361 F.3d at 279; *Frank,* 347 F.3d at 136; *Felton v. Polles,* 315 F.3d 470, 485 (5th Cir. 2002); *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 351 (5th Cir.2001); *Huckabay v. Moore,* 142 F.3d 233, 238–39 (5th Cir.1998); *Webb,* 139 F.3d at 537; *see also Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). The court's task is to determine "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Morgan,* 536 U.S. at 120, 122 S.Ct. 2061. In contrast to a claim alleging a hostile work environment, the continuing violation doctrine does not apply to a claim based on discrete discriminatory acts. *See Pegram,* 361 F.3d at 279; *Celestine,* 266 F.3d at 352; *Huckabay,* 142 F.3d at 239.

"The doctrine ' "requires the *same type* of discriminatory acts to occur both inside and outside the limitations period, such that a valid connection 'exists between them." ' " *Felton,* 315 F.3d at 485 (emphasis in original) (quoting *Celestine,* 266 F.3d at 351 (quoting *ARCO Chem. Co.,* 203 F.3d at 913)). "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation." *Huckabay,* 142 F.3d at 239; *see Celestine,* 266 F.3d at 352; *Berry v. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983). "[I]t is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay,* 142 F.3d at 239; *see Morgan,* 536 U.S. at 118, 122

S.Ct. 2061; *Messer,* 130 F.3d at 135; *Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1561 (5th Cir.1985). "The end goal of the continuing violation theory is to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period' " and then " 'all of the discriminated acts committed as part of this pattern or policy can be considered timely.' " *Pegram,* 361 F.3d at 279 (quoting *Celestine,* 266 F.3d at 352); *see also Yerby v. University of Houston,* 230 F.Supp.2d 753, 761–62 (S.D.Tex.2002).

Application of this theory relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period, as long as she can show that at least one of the alleged discriminatory acts arose within 300 days of her EEOC charge. *See Morgan,* 536 U.S. at 117, 122 S.Ct. 2061; *Pegram,* 361 F.3d at 279; *Huckabay,* 142 F.3d at 238 (citing *Messer,* 130 F.3d at 135); *Webb,* 139 F.3d at 537. Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Morgan,* 536 U.S. at 118, 122 S.Ct. 2061. Thus, in order to be timely, an employee need only file an EEOC charge within 300 days of any act that comprises part of the hostile work environment claim. *See id.* "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117, 122 S.Ct. 2061. If none of the alleged acts occurred within the 300–day limitations period, however, the plaintiff's cause of action for employment discrimination is time-barred. *See Morgan,* 536 U.S. at 105, 122 S.Ct. 2061; *Delaware State Coll.,* 449 U.S.

at 258, 101 S.Ct. 498; *Huckabay,* 142 F.3d at 240.

■ The purpose behind allowing a plaintiff to maintain a cause of action under the continuing violation theory is to permit redress for acts the discriminatory character of which was not apparent at the time they occurred. *See Speer v. Rand McNally Co.,* 123 F.3d 658, 663–64 (7th Cir.1997); *accord Sweeney v. West,* 149 F.3d 550, 556 (7th Cir.1998). A continuing violation tolls the statute of limitations because such statutes are meant only to prevent stale claims. *See McGregor v. Louisiana State Univ. Bd. of Supervisors,* 3 F.3d 850, 867 (5th Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). " 'Where the challenged violation is a continuing one, the staleness concern disappears.' " *Id.; see also* (quoting *Glass,* 757 F.2d at 1560).

■ The Fifth Circuit has adopted a multi-factor test to assess whether a continuing violation is implicated. *See Celestine,* 266 F.3d at 351; *Huckabay,* 142 F.3d at 239; *Berry,* 715 F.2d at 981. These factors include subject matter, frequency, and permanence:

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged facts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.; see Celestine,* 266 F.3d at 351; *Huckabay,* 142 F.3d at 239; *see also Morgan,* 536 U.S. at 107 n. 3, 122 S.Ct. 2061. "Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." *Huckabay,* 142 F.3d at 239 (citing *Berry,* 715 F.2d at 981).

" 'The core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.' " *Webb,* 139 F.3d at 537 (quoting *Glass,* 757 F.2d at 1560–61). " 'The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.' " *Id.* (quoting *Glass,* 757 F.2d at 1561 (citations omitted)); *see also Messer,* 130 F.3d at 135; *Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 534 (5th Cir.1986). Nonetheless, the Fifth Circuit has cautioned that "[t]his theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of statutes of limitation in Title VII cases." *Id.* at 533.

■ Here, Chevron argues that Blanchet filed her EEOC charge more than 300 days after the latest instance of alleged discrimination. Chevron bases its argument on Blanchet's EEOC charge dated October 31, 2003. According to the amended, verified charge, the last alleged date of discrimination took place on January 3, 2003, which is 301 days before she filed the October 31, 2003, charge. In

response, Blanchet points out that she initially filed her charge with the EEOC on October 1, 2003, and the amended charge relates back to the earlier filed charge.

EEOC regulations permit a claimant to amend a charge of discrimination to "clarify or amplify" allegations in the charge. 29 C.F.R. § 1601.12(b); *see also Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 878 (5th Cir.2003), *cert. denied,* 540 U.S. 1107, 124 S.Ct. 1060, 157 L.Ed.2d 892 (2004). According to the EEOC's procedural regulations:

> a charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify or amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b); *see also Edelman v. Lynchburg Coll.,* 535 U.S. 106, 115–16, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002); *Manning,* 332 F.3d at 878; *Price v. Southwestern Bell Tel. Co.,* 687 F.2d 74, 77 (5th Cir.1982). The subject matter of Blanchet's October 1 charge is the same as that of her October 31 charge. Thus, the amended charge dated October 31, 2003, relates back to the original charge dated October 1, 2003, which is controlling for purposes of determining whether Blanchet's sexual discrimination claims are time-barred.

Chevron contends that, without regard to which EEOC charge is considered, Blanchet's Title VII claim is time-barred, maintaining that all of the alleged acts of discrimination occurred outside the limitations period. Conversely, Blanchet asserts that McQueen's actions created a hostile work environment, and thus, for purposes of her Title VII claim, the court may consider incidents of harassment that occurred both inside and outside the limitations period under the continuing violation theory. In order to show that the continuing violation doctrine applies in this case, Blanchet relies on her EEOC charges and affidavit to substantiate her claim that actions constituting part of the hostile work environment took place within the limitations period.

Blanchet's EEOC charges reflect that her sex discrimination claim is based, in part, on discriminatory actions that occurred prior to December 5, 2002 (300 days preceding October 1, 2003). The information charge sheet relating to the unverified charge, as well as the verified EEOC charge itself, states that McQueen showed Blanchet the purportedly offensive cookbook in "mid to late October 2002." The amended charge, however, also indicates that incidents of alleged sexual harassment took place after December 5, 2002, stating, "During October 2002 to January 3, 2003, I was subjected to comments of a sexual nature which created a hostile work environment." Furthermore, Blanchet's affidavit recounts instances of misconduct that allegedly occurred between October 2002 and January 2003, at least in part, within the limitations period. The affidavit states:

> In approximately October, 2002, Mr. McQueen gave me a cookbook entitled "How to Cook and Get Laid A Lot. A Cook Book for Bachelors." I found this cookbook to be offensive.
>
> During my employment, specifically including the period of time from October, 2002 until January 3, 2003, the date of my termination, Mr. McQueen continuously subjected me to sexually explicit statements regarding his sexual activity and his girlfriend's activity. Examples of the comments made to me or in my presence include statements to the effect that his girlfriend knew that when he

came home, she was to be naked, and that he had sex with his girlfriend multiple times each day.

He called a coworker 'boom boom' because of the size of her breasts. He did this continuously until the date I was terminated in January.

On one occasion, he used my phone to call his girlfriend, and in my presence told her to "get up and wash your nasty ass."

He frequently told off-color and sexual jokes in my presence, and continued to do this until I was terminated in January, 2003.

Further, Mr. McQueen continued to distribute the offensive cookbook, and frequently suggested that co-workers should cook naked while using his cookbook.

Hence, according to her EEOC charges and affidavit, the alleged acts of sexual harassment that created a hostile work environment manifested themselves over time, spanning from outside to inside the limitations period. Additionally, Blanchet links purported acts of sexual discrimination that occurred prior to December 5, 2002, with asserted acts of discrimination arising within the limitations period. *See Morgan*, 536 U.S. at 117, 122 S.Ct. 2061; *Felton*, 315 F.3d at 485. Specifically, Blanchet complains that McQueen persistently subjected her to sexually explicit statements, repeatedly called coworkers derogatory names, frequently told inappropriate jokes, and continuously suggested that co-workers cook in the nude before and after December 5, 2002.

Moreover, Blanchet appears to satisfy the Fifth Circuit's continuing violation criteria for hostile work environment claims. The subject matter of the alleged events that took place outside the limitations period is the same as those that occurred within the limitations period-sexual harassment. Blanchet also alleges that McQueen's acts recurred with sufficient frequency. In fact, she complains that McQueen continuously subjected her to sexual discrimination from October 2002 until January 3, 2003. Finally, the episodic acts allegedly occurring outside the limitations period, until joined with those within the limitations period, were arguably insufficient to put Blanchet on notice that the purported discrimination would be ongoing. Hence, in view of the continuing violation theory, the court cannot conclude that Blanchet's Title VII hostile work environment claim is time-barred.

### C. Failure to Exhaust Administrative Remedies

Blanchet also claims that she was discharged on January 3, 2003, in retaliation for her complaints to Chevron's management about McQueen's alleged sexual discrimination. It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC. *See Taylor v. Books A Million*, 296 F.3d 376, 378–79 (5th Cir.2002), *cert. denied*, 537 U.S. 1200, 123 S.Ct. 1287, 154 L.Ed.2d 1041 (2003); *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir.1998); *Barnes v. Levitt*, 118 F.3d 404, 408–09 (5th Cir.1997), *cert. denied*, 523 U.S. 1136, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir.1995); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir.1994); *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279 (5th Cir.1994); *see also* 42 U.S.C. § 2000e–5(e)(1); *Clayton v. Rumsfeld*, 2004 WL 1739465, 106 Fed.Appx. 268, 271 (5th Cir.2004). While not uniformly viewed as a jurisdictional prerequisite, the filing of an EEOC charge " 'is a precondition to filing in district court.' " *Taylor*, 296 F.3d at 379 (quoting *Dao v. Auchan*

*Hypermarket,* 96 F.3d 787, 789 (5th Cir. 1996) (citing *Cruce v. Brazosport Indep. Sch. Dist.,* 703 F.2d 862, 863 (5th Cir. 1983))).

The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged and to activate the voluntary compliance and conciliation functions of the EEOC. *See Manning,* 332 F.3d at 878; *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 577–78 (5th Cir.1993); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *See Barnes,* 118 F.3d at 409; *EEOC v. Hearst Corp.,* 103 F.3d 462, 464 (5th Cir. 1997). Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■■■■■ Civil complaints filed under Title VII may only encompass " 'discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.' " *National Ass'n of Gov't Employees,* 40 F.3d at 711 (quoting *Sanchez,* 431 F.2d at 466); *see Dollis,* 77 F.3d at 781; *Fine,* 995 F.2d at 578. Accordingly, the scope of the complaint is limited to " 'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.' " *National Ass'n of Gov't Employees,* 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R.R. Co.,* 538 F.2d 581, 583 (4th Cir.1976)); *see Thomas v. Texas Dep't of Crim. Justice,* 220 F.3d 389, 395 (5th Cir.2000); *Clark,* 18 F.3d at 1279–80; *Sanchez,* 431 F.2d at 465–66.

Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit. *See Thomas,* 220 F.3d at 395; *National Ass'n of Gov't Employees,* 40 F.3d at 711–12; *Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir. 1990); *Sanchez,* 431 F.2d at 465–66. Several district courts have recently applied these principles to disallow a variety of claims not raised in the EEOC charge. *See, e.g., Harvill v. Westward Communications, LLC,* 311 F.Supp.2d 573, 585 (E.D.Tex.2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge); *Stewart v. May Dep't Stores,* 294 F.Supp.2d 841, 848–49 (M.D.La.2003) (precluding the plaintiff, "by the four corners of her document," from asserting race discrimination claim because her EEOC charge did not have the appropriate box checked); *Seppy v. City of Irving,* No. Civ. A. 3:00–CV–386–R, 2002 WL 1592609, at *4 (N.D.Tex. July 18, 2002) (finding that the plaintiff's race, gender, retaliation, and hostile work environment claims were barred because she checked only the national origin and age discrimination boxes on the EEOC charge).

■■■ Nevertheless, when a retaliation claim grows out of a properly filed employment discrimination charge, it is not necessary for a plaintiff to file a second charge specifically alleging retaliation. *See Gupta v. East Tex. State Univ.,* 654 F.2d 411, 414 (5th Cir.1981) (holding "[i]t is the nature of retaliation claims that they arise after the filing of an EEOC charge"); *see also Thompson v. Origin Tech. In Bus. Inc.,* No. 3:99–CV–2077–L, 2001 WL 1018748, at *9–10 (N.D.Tex. Aug. 20, 2001) (finding the court may consider a retaliation claim that arose in response to the plaintiff's EEOC

charge). If, as here, however, the "alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust her administrative remedies on that claim." *McCray v. DPC Indus., Inc.,* 942 F.Supp. 288, 294 (E.D.Tex.1996); *see Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991) (distinguishing retaliatory conduct occurring prior to filing an EEOC charge from conduct occurring afterward); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 n. 2 (7th Cir.1988), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). "To hold otherwise would effectively exempt all retaliation claims from Title VII's requirements regarding exhaustion of administrative remedies." *McCray,* 942 F.Supp. at 295.

■■■ In the case at bar, Blanchet's EEOC charge dated October 1, 2003, like her prior charge, alleges only discrimination on the basis of sex. In her amended complaint, filed August 17, 2004, she contends for the first time that Chevron retaliated against her for complaining to Chevron's management about the alleged sexual harassment. The EEOC charge dated October 31, 2003, indicates that Blanchet complained to Project Manager David Craig, Contract Coordinator Kathy Robinson, and Auditor Gloria Delgadillo about McQueen's alleged sexual discrimination. Although Blanchet was terminated nine months previously, neither charge asserts that she was retaliated against for making these complaints, despite ample time for her to discover that retaliation might have occurred. This is not a situation where Blanchet filed her initial EEOC charge before she was terminated and was subsequently discharged as a result of pursuing her administrative remedies. Instead, she was terminated long before she contacted the EEOC about filing a charge, yet she never suggested the existence of a retaliatory motive during the administrative process.

Indeed, Blanchet failed to check the "retaliation" box on either EEOC charge. *See Stewart,* 294 F.Supp.2d at 848–49; *McCray,* 942 F.Supp. at 294. Rather, on the October 1 charge, Blanchet checked the "other (specify)" box and handwrote "sexual harassment," and, on the October 31 charge, she marked only the "sex" box. Therefore, as to her claim of retaliation, Blanchet has failed to exhaust her administrative remedies before the EEOC. As a consequence, she cannot now rely for relief on her belated cause of action for retaliation. *See Stewart,* 294 F.Supp.2d at 848–49. Accordingly, Blanchet is foreclosed from pursuing her retaliation claim in this forum.

### III. *Conclusion*

Under the continuing violation theory, Blanchet has stated sufficient facts alleging that sexual discrimination took place both within and without the limitations period to permit her Title VII hostile work environment claim to proceed. The court, however, is precluded from considering Blanchet's retaliation claim because she failed to exhaust her administrative remedies with respect to that claim. Therefore, Blanchet's Title VII retaliation claim against Chevron is dismissed with prejudice. Blanchet may continue to pursue her claim of sexual discrimination.

IT IS SO ORDERED.